UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TRICIA RIGSBY FRANATOVICH | * | CIVIL ACTION NO.  2:22-cv-02552 |
| | * | C/W:  2:22-cv-04927 |
| VERSUS | * | |
| | * | JUDGE LANCE M. AFRICK |
| ALLIED TRUST INSURANCE | * | |
| COMPANY | * | |
| | * | MAGISTRATE KAREN WELLS ROBY |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM REGARDING MOTION TO NULLIFY AND EXCLUDE APPRAISAL

**NOW INTO COURT**, through undersigned counsel, comes Allied Trust Insurance Company (hereinafter "Allied"), who submits this Memorandum Regarding Plaintiff's Motion to Nullify and Exclude Appraisal.  Allied agrees with Plaintiff that McClenny, Moseley & Associates (hereinafter "MMA") had no authority to demand appraisal and represent Plaintiff in this matter.  Allied submits that it is also a victim of this ruse in that it participated in good faith in an appraisal process over a period of five months that reached a conclusion on December 14, 2022 and only now has been called into serious question.  Allied further has been prejudiced by MMA's actions in that it has participated in litigation and expended significant defense costs, only to have Plaintiff's troublesome accusations come to light at this late juncture in the instant case.  Allied takes seriously the concerning issues raised by its policyholder, Ms. Franatovich, and joins in her desire to have an appraisal process which follows the dictates of the subject policy and Louisiana law.

After Case No. 2:22-cv-2552 has been litigated with counsel with Broussard + Williamson since it was originally filed on August 8, 2022, Allied was further surprised by MMA's filing of a second lawsuit, 2:22-cv-04927, on behalf of plaintiff on December 7, 2022 arising out of the same

1

set of facts and circumstances.  Allied submits that it has been further prejudiced by the filing of this unnecessary and duplicative second lawsuit, which clearly violates MMA's responsibilities under Fed. Rule Civ Pro. 11(b).

Unfortunately, MMA's behavior revealed in this matter is not an isolated incident that can be explained by a simple mistake.  Rather, MMA's tactics are part of a pattern and practice of improper behavior that has pervaded their short existence in Louisiana.  Allied takes this opportunity to reveal the similarities of the allegations made by Plaintiff in the instant matter and that of other cases in which the people of Louisiana have been harmed by MMA's actions.

I.      **MMA WORKS WITH ITS CLIENT, APEX ROOFING, TO ILLEGALLY ACQUIRE CLIENTS**

Plaintiff makes clear in Rec. Doc. 20-12 that she never hired MMA and states as follows:

> I have never retained McClenny, Moseley and Associates to represent me.  When I was looking for a roofer, a company called Apex Roofing said they could help me, so I signed paperwork with them. It was not my intention to hire McClenny, Moseley and Associates through the roofer.

Plaintiff makes clear through her pleadings that not only did she not sign up with MMA as a client, that the illegal circumstances surrounding MMA's participation in the instant matter surrounded her initial involvement with Apex Roofing & Restoration, LLC ("Apex Roofing"), a Birmingham, Alabama corporation who did not register in Louisiana until  September 14, 2021.[1] Plaintiff's statement clearly sets forth that MMA worked through Apex Roofing to falsely assert to Allied that MMA represented Plaintiff.  As is explained in detail below, MMA conspired with Apex Roofing, who is MMA's client, to improperly solicit and obtain clients for MMA in Louisiana in the aftermath of Hurricane Ida.  Many Louisianans, including Ms. Franatovich, have

---

[1] Louisiana Secretary of State Corporations Database Detailed Record for Apex Roofing and Restoration, LLC, Exhibit "1".

suffered by this arrangement.  We take the opportunity to share the shocking details of one such instance involving clients of The Monson Law Firm, Michael and Holly Caffarel ("the Caffarels").

### A. MMA CONSPIRED WITH APEX ROOFING TO FRAUDULENTLY DIVERT THE CAFFARELS' INSURANCE PROCEEDS TO MMA

The attached correspondence from attorney Richard William Huye, III, MMA's Louisiana Managing Partner and other materials show unequivocally that Mr. Huye and MMA falsely claimed to Maison Insurance Company that they represented the Caffarels when, in fact, no such attorney-client relationship ever existed.  This correspondence and false representations resulted in Maison Insurance Company placing MMA on two checks, which prevented the Caffarels from using insurance claim funds to repair their home until undersigned counsel was retained.

At all material times, Mr. Huye and MMA represented Apex Roofing, with which they conspired to deprive the Caffarels of their insurance claim proceeds.  This scheme between Apex Roofing, Mr. Huye and MMA evidence "fraudulent insurance acts" as defined by La. R.S. 22:1923(2)(a)(iii), La. R.S. 22:1923(2)(d)(ii), and La. R.S. 22:1923(2)(m).

#### 1. Meeting with Apex Roofing Representative

On March 15, 2022, the Caffarels were approached at their home by a representative of Apex Roofing, Mr. Seth Anderson.  Apex Roofing is not licensed as a Public Adjusting Company nor is Mr. Anderson a licensed Public Adjuster. The Caffarels were told that a hailstorm hit their property on or about October 27, 2021 and that there was damage that called for replacement of their entire roof.

Mr. Anderson had the Caffarels sign two documents.  The first document is a Work Order to replace the roof at a cost of $7.50 per square foot, which is considerably above the market rate.[2]

---

[2] Apex Roofing Work Order, March 15, 2022, Exhibit "2".

It is of note that there is no actual estimate that Mr. Anderson provided to the Caffarels. In this Work Order, there is no reference to Mr. Huye or MMA.

The second document Mr. Anderson had the Caffarels sign is an Assignment of Benefits[3]. In this agreement, the Caffarels agreed to assign their post-loss rights of recovery to Apex Roofing. The Assignment of Benefits bestowed all legal rights to Apex Roofing, including the right to make a claim against Maison Insurance Company. Further in the Assignment of Benefits, there is no mention of Mr. Huye, or MMA. The pertinent Assignment of Benefits language is as follows:

> II.   **Assignment.** In furtherance of the foregoing and to the extent permitted by law, Property Owner hereby assigns, conveys and transfers to Company all of Property Owner's right, title, and interest in and to any and all rights, benefits, proceeds and causes of action under the insurance claim with Insurer set forth above with regard to the Work performed or to be performed by Company on the Property as set forth in the Contract (the "Claim"). This Assignment is delivered as partial consideration for Company to perform the Work on the Property pursuant to the terms of the Contract. Property Owner authorizes Insurer to release any and all information requested by Company or its representatives in connection with the Contract, the Work, and/or the Claim.

Despite this language, Apex Roofing falsely called in the claim to Maison Insurance Company on behalf of the Caffarels and not Apex Roofing. This is not proper as it was a blatant misrepresentation of the contractual agreement that was signed by the Caffarels. Further, a contractor cannot represent an insured on a first-party property damage claim.

### 2.   Maison Insurance Company Response to Claim

In response to the claim filed by Apex Roofing on behalf of the Caffarels, Maison engaged Southeast Catastrophe Consulting Company, who was contacted on March 18, 2022 and inspected the roof on March 24, 2022. The estimate was created on April 1, 2022 in the amount of $21,415.52 for dwelling coverage and $2,552.50 in other structures coverage.

---

[3] Apex Roofing Assignment of Benefits, March 15, 2022, Exhibit "3".

### 3.   Mr. Huye and MMA Letter of Representation

Mr. Huye and MMA received the information about the Caffarels from their client, Apex Roofing, who was acting as the agent of Mr. Huye and MMA in obtaining clients for them.  Neither Mr. Huye nor MMA had any contact whatsoever with the Caffarels and the Caffarels had not heard of either Mr. Huye or MMA up to this point.

On April 4, 2022, Mr. Huye and MMA wrote a "LETTER OF REPRESENTATION AND FIRST NOTICE OF LOSS" to Maison Insurance Company.[4]  This letter, signed by Mr. Huye, wrongly refers to "Our Client" as Michael Caffarel and specifically states in bold "**This requires that McClenny Moseley & Associates, PLLC be listed as a payee on any payment or draft made from this point forward**." (emphasis in original).  The letter also indicates that all checks are to be sent to MMA's headquarters address at 1415 Louisiana St., Suite 2900, Houston, TX 77002.  Further, the letter signed by Huye requests confidential insurance information from Maison Insurance Company regarding the Caffarels, including the following:

(1)    An explanation of any and all coverage defenses that Maison Insurance Company is asserting. If Maison Insurance Company is not asserting any coverage defenses, please state so in writing.

(2)    An estimate of damages to the building under coverage A, additional structures under coverage B, and contents under coverage C, including but not limited to any drafts.

(3)    All photographs taken by Maison Insurance Company's representatives depicting the insured property and/or contents.

(4)    All adjuster notes or claim notes pertaining to this claim.

(5)    A complete copy of the underwriting file and a full copy of the claims file.

(6)    All correspondence exchanged between your representatives, Maison Insurance Company, and my client.

---

[4] LETTER OF REPRESENTATION AND FIRST NOTICE OF LOSS, April 4, 2022, Exhibit "4".

(7)     The date Maison Insurance Company acknowledged the claim and the record of acknowledgement.

(8)     The date Maison Insurance Company commenced the investigation of the claim and any request for information submitted to my client.

(9)     The date Maison Insurance Company accepted or rejected the claim, and the reasons for any rejection.

(10)    The date(s) Maison Insurance Company made payment on the claim.

(11)    If no payment has been made on the claim, please immediately tender all undisputed payments.

(12)    Any and all consultant reports (Adjuster, Engineer, etc., including drafts).

All information demanded by Mr. Huye and MMA is protected non-public insurance information. Indeed, La. R.S. 22:2504B(3) directs insurers to "Protect against unauthorized access to or use of non-public information and minimize the likelihood of harm to any consumer." By intentionally misrepresenting to Maison that he and MMA represented the Caffarels, Mr. Huye improperly received both correspondence about the Caffarels' claim and obtained settlement funds from Maison Insurance Company.

On April 20, 2022, Maison Insurance Company via Fed Nat Adjusting provided the Certified Copy of the Insured's policy to Mr. Huye and MMA as instructed in MMA's Letter of Representation.

### 4.    MMA was Wrongfully Listed as Payees on Two Checks from Maison Insurance Company

On April 20, 2022, Maison Insurance Company via Fed Nat Adjusting provided a payment letter, which was mailed to MMA.[5]  This letter was provided to Mr. Huye and MMA as demanded in MMA's Letter of Representation.  In this letter, two checks were provided:

---

[5] Payment letter from Maison Insurance Company, April 20, 2022, Exhibit "5".

Check No. 260237, dated 04/18/2022 in the amount of $21,415.52 for dwelling coverage; and

Check No. 260238, dated 04/18/2022 in the amount of $2,552.50 for other structures coverage.

Notably, these checks were each made payable to "MICHAEL AND HOLLY CAFFAREL AND MCCLENNY MOSELEY & ASSOCIATES AND JPMORGAN CHASE BANK, N.A. ASSOCIATION ISAOA/ATIMA". Thus, MMA was placed on two checks for which they did not represent the Caffarels.[6]

Upon receipt of the checks from Maison, MMA forwarded the checks to the Caffarels' mortgage holder, Chase Bank. At no point upon receipt of the check did either Mr. Huye or MMA inform the Caffarels that the checks had been received or that the checks were being presented to Chase. Nor did Mr. Huye or MMA send the checks to the Caffarels so that they could endorse the checks.

### 5.   The Maison Insurance Company Policy issued to the Caffarels Does Not Allow Apex Roofing to Make a Claim Against the Policy

As is set forth in detail below, in both a phone call and email correspondence, Mr. Huye admits that he and MMA actually represented Apex Roofing and NOT the Caffarels. There is no engagement letter, no contract and no communications at any point between either Mr. Huye or MMA and the Caffarels. Apex Roofing coerced the Caffarels to execute the Assignment of Benefits agreement without mentioning the existence of Mr. Huye, MMA or the actual or potential involvement of legal counsel.

The Maison Insurance Company policy provides as follows regarding Assignments of Benefits, such as executed by the Caffarels in favor of Apex Roofing, in Form MIC HO AOB 04 18:

---

[6] Check No. 260237 and Check No. 260238, Exhibit "6" *in globo*.

**Maison Insurance Company**
**Homeowners**

**MIC HO AOB 04 18**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT
CAREFULLY.

## ASSIGNMENT OF BENEFITS ENDORSEMENT

Under **SECTION I AND II CONDITIONS, E. Assignment** is deleted and
replaced in its entirety by the following:

**E.     Assignment**

Assignment of this policy will not be valid unless we give our written
consent.

1.  We do not consent to, and we specifically prohit, the assignment of the
policy, or the assignment of any rights, interest, benefits and/or claims
arising under the policy, at any time, whether such assignment is made prior
to the occurrence of a loss, or after a loss.

2.  The pre-loss assignment of the policy, or of any of the rigths, interset,
benefits, and/or caims arising under the plicy, is prohibited and invalid.

3.  The post-loss assignment of the policy, or of any of the rights, interests,
benefits, and/or claims arising under the policy, is prohibited and invalid.
All other provisions of the policy apply.[7]

This language prohibits Maison Insurance Company from paying claims directly to AOB
contractors.   Insurance policy language restricting direct recovery by AOB contractors from
insurers was originally approved by the Louisiana Department of Insurance as a consumer
protection action in February 2017.   The policy issued to the Caffarels provides that only the
Caffarels are the proper party to assert a claim and Apex Roofing as assignee has no direct rights
against the Caffarels' policy.

---

[7] Maison Insurance Company Policy issued to Michael Caffarel, Exhibit "7".

For Apex Roofing to receive the Caffarels' insurance proceeds, it needed a way to get around the AOB prohibition contained in the Maison Insurance Company policy.  As such, Apex Roofing wrongfully conspired with Mr. Huye and MMA to present the claim to Maison Insurance Company through MMA and Mr. Huye falsely acting as counsel for the Caffarels.  This way, Maison Insurance Company would issue payment directly to Mr. Huye and MMA and bypass the Caffarels.  This fraudulent scheme insured that MMA would receive an unwarranted fee and Apex Roofing would obtain the balance of the funds issued by Maison Insurance Company.  Further, the Caffarels would not only have to pay an inflated price for the roof, but would also have to make up the deficit to Apex Roofing caused by the illegal fees siphoned off by MMA.

As evidence of this illegal scheme, Apex Roofing representative Seth Anderson called in the claim directly to Maison Insurance Company, not as a representative of Apex Roofing, but on behalf of the Caffarels.  Mr. Huye and MMA demanded that Maison Insurance Company forward any claim payments to MMA and include MMA as payee on these checks. Upon receipt of the checks from Maison, MMA forwarded the checks to Chase Bank.  At no point upon receipt of the checks did Mr. Huye or MMA inform the Caffarels that the checks had been received or that the checks were being presented to Chase for endorsement.  Nor did MMA send the checks to the Caffarels so that they could endorse the checks.

This illegal scheme was only discovered as Chase Bank, who endorsed the checks after receiving them from MMA, then sent the checks to the Caffarels - not MMA - for the Caffarels' endorsement. Upon receipt of the checks, the Caffarels were confused as to why MMA was on the checks as they had no communication with Mr. Huye or anyone from MMA. Up to that point, the Caffarels did not know that Mr. Huye or MMA existed.

6.     **The Monson Law Firm's Representation of the Caffarels and Notice to Mr. Huye and MMA**

The Caffarels turned to undersigned counsel for help and assistance. To ensure that proper steps were taken if Mr. Huye and MMA actually represented the Caffarels, the undersigned entered into an engagement agreement with the Caffarels. Once this agreement was reduced to writing, the undersigned sent correspondence on July 22, 2022 to Mr. Huye and MMA informing them that The Monson Law Firm, LLC represents the Caffarels and for Mr. Huye and MMA to forward any of the Caffarels' file materials pursuant to Louisiana Rules of Professional Conduct 1.16(d). This correspondence was signed for via certified mail by an MMA representative on July 26, 2022[8] Even though Mr. Huye has correspondence in his file with Maison Insurance Company indicating he represents the Caffarels, no file materials of the Caffarels were ever provided, in clear violation of this rule. Specifically, Mr. Huye and MMA have also not provided the correspondence they sent to Chase Bank providing the settlement checks for endorsement.

7.     **July 28, 2022 Phone Call with Mr. Huye**

In response to this correspondence, Mr. Huye called The Monson Law Firm at 9:47 a.m. on July 28, 2022 and left a message for the undersigned with legal assistant Jennifer Lorino indicating that he thought The Monson Law Firm committed ethics violations. The message is as follows:

---

[8] Correspondence from Matthew Monson to R. William Huye, July 22, 2022, Exhibit "8".



After receiving a message in which Mr. Huye threatened our legal assistant with baseless

allegations of ethical impropriety, the undersigned called Mr. Huye and recorded the phone call.[9]

The pertinent parts of the discussion are detailed below:

MR. HUYE:

. . . And then this morning, I got Caffarel, and that was kind of the most interesting
of the bunch. And, so, really wanted to talk with you on Caffarel directly and kind
of see what your MO is on that one -- certainly, a unusual set of events.

MR. MONSON:

Yeah. The short answer is: We represent them and your firm does not. So we need
to file materials.

MR. HUYE:

Well, yeah. What I -- so I sent them an email -- I don't know if you saw it -- but
we represent Apex, which is their roofing company, based on an AOB. And so
we're intending to kind of move forward in that direction, pursuant to the AOB.

MR. MONSON:

Does your firm represent the Caffarels -- or did your firm ever --

MR. HUYE:

We currently represent -- Go ahead.

MR. MONSON:

Did your firm ever represent the Caffarels?

_____

[9] Transcript of phone call between R William Huye, III and Matthew Monson, Exhibit "9".

MR. HUYE:

No. We're representing their interest, pursuant to the AOB that they signed with Apex.

MR. MONSON:

Okay. But you either represent them or you don't, so I just need to know that.

MR. HUYE:

Yeah. Well, I thought I would -- and look -- look, Matt, I'm pretty easy to work with, and I'm definitely trying to reach out and be easy to work with, with you.

MR. MONSON:

Yeah.

MR. HUYE:

And so I believe that my answer was: No. We represent their interests, which they assigned to Apex Roofing.

MR. MONSON:

Okay. So you represent – you represent Apex Roofing and not –

MR. HUYE:

We represent Apex Roofing.

MR. MONSON:

-- and not the Caffarels.

MR. HUYE:

Yes.

MR. MONSON:

Okay. Well, that's good.

MR. HUYE:

Yes.

MR. MONSON:

So you don't have any file materials related to any kind of representation of, actually, the Caffarels, then.

MR. HUYE:

That's correct.

MR. MONSON:

Okay. Well, then, that clears things up. Well, cool. I
look forward to talking with you on Monday on the rest of the things.

MR. HUYE:

Yeah. Yeah. Yeah. We will definitely go through that. On Caffarel, I mean, do we have a conflict of interest on that? I want to kind of think through that, off the record --

MR. MONSON:

Does your firm have a conflict of interest?

MR. HUYE:

-- and just make sure we have an opportunity to get this whole thing resolved.

MR. MONSON:

Yeah. I don't have a conflict of interest representing the Caffarels.

MR. HUYE:

Well, I'm just -- okay. Because I was just worried. I mean, this is an Allied claim; correct?

MR. MONSON:

No.

MR. HUYE:

Okay. All right. So you're confident that your firm does not have a conflict of interest on the Caffarel claim and that moving forward with the idea of you representing the Caffarels' interests, which they've assigned to Apex Roofing, you don't believe that we have any sort of – any sort of conflict that we need to further investigate?

MR. MONSON:

I don't know if you have any conflict, but we don't have any conflict with our representation.

MR. HUYE:

Okay. Well, that sounds like a plan.

. . .

As can be clearly seen by this call, Mr. Huye wrongfully suggested that The Monson Law Firm had a conflict of interest through its instant representation of the Caffarels based on an incorrect belief that the Caffarels were insured by Allied.  The Monson Law Firm does not represent Maison Insurance Company and has never represented Apex Roofing.

Further, Mr. Huye clearly confirmed that he and MMA at all material times represent Apex Roofing, who contracted with the Caffarels.  Because Mr. Huye and MMA represent Apex Roofing, it is a clear conflict of interest for them to also represent the Caffarels.  For the same reason, it is further a clear conflict of interest for either Mr. Huye or MMA to represent Plaintiff or any other client of Apex Roofing.

Mr. Huye also clearly confirmed in this conversation that he did not represent the Caffarels. This indicates that Mr. Huye made dishonest statements to either Maison Insurance Company (if Mr. Huye did not represent the Caffarels) or to the undersigned (if Mr. Huye did represent the Caffarels as asserted in his Letter of Representation).

### 8.    Mr. Huye Email Dated August 2, 2022

Even though the above phone call took place covering the issues related to the representation of the Caffarels, Mr. Huye wrote an email to the undersigned on August 2, 2022. The email states:

> Mr. Monson,
>
> I am surprised by your letter.
>
> We were hired by APEX Roofing, the Caffarel's roofer, pursuant to an AOB.
>
> I just left a message for you at your office, please call me to discuss further.
>
> Thanks,
> **R. William Huye III**
> *Louisiana Managing Partner*[10]

Again, Mr. Huye repeats his admissions on the July 28, 2022 phone call that he and MMA did not at any point represent the Caffarels, even though he sent correspondence to Maison Insurance Company to the contrary.  It is also of note that Mr. Huye now copied MMA name partner Zach Moseley on the correspondence, which did not reference the earlier phone call that addressed the matter of representation in its entirety.  Further, no message was left at undersigned counsel's office as indicated in the email.

### 9.    Mr. Huye Correspondence Dated September 22, 2022

Despite Mr. Huye's clear verbal and written communications that he did not represent the Caffarels and only represented Apex Roofing, on September 22, 2022, Mr. Huye wrote correspondence to Michael Caffarel entitled "Notice of Withdrawal of Representation".  In this correspondence, Mr. Huye and MMA state:

> This letter shall serve as written confirmation that McClenny Moseley & Associates and Krause & Kinsman Trial Lawyers, LLP will not be representing you any further

---

[10] Email from R. William Huye, III to Matthew Monson August 2, 2022, Exhibit "10".

15

in connection with your claim against Maison Insurance Company arising out of the claim for damages on 10/27/01.

This statement is certainly confusing and begs the question:  If MMA was not representing the Caffarels, then why withdraw from their representation?  Mr. Huye and MMA's inconsistent statements in this regard cannot be reconciled.

The Caffarels were not able to negotiate their checks as MMA was wrongly listed on them as an additional payee. Further, the Caffarels were not able to proceed with their needed roof repairs. Notably, Apex Roofing never took steps to begin work on the premises.  With news of Maison Insurance Company's impending demise, The Monson Law Firm insisted that MMA endorse the checks so that the Caffarels could negotiate them prior to any Order of Liquidation, which was ultimately issued on September 27, 2022.  Mr. Huye and MMA acquiesced to that demand and endorsed the checks the evening of September 22, 2022 – over five months after the checks were originally issued.

### B.    MMA AND APEX ROOFING HAVE MORE VICTIMS

Undersigned counsel has been in touch with another person who has fallen victim to this MMA/Apex Roofing scheme and will be working with this person to present his claims to the appropriate parties shortly.  Accordingly, the two instances here are not isolated incidents.  Allied respectfully requests this Honorable Court order MMA and Apex Roofing to fully and completely disclose their list of common "clients", including the clients for which MMA has previously withdrawn from representation.

## II.  MMA HAS FILED CLAIMS WITHOUT CLIENT PERMISSION IN ANOTHER EASTERN DISTRICT CASE

In the case of *Allied Trust Insurance Company v. Steven Ripoll*, recently pending in the Eastern District of Louisiana, Case No. 2:22-cv-02811, there are also serious allegations consistent

with the assertions made by Plaintiff in the instant case.  In a status conference conducted before the Honorable Susie Morgan, Mr. Ripoll confirmed the following list of facts regarding his case, each of which are set forth in Record Document 24 of that case:

1. His home, which is located at 413 Place Saint Charles, Covington, LA 70433, was damaged during Hurricane Ida, which made landfall in Southeast Louisiana on August 29, 2021.

2. Thereafter, he made a claim with Allied Trust, which was his homeowners' insurer.

3. Allied Trust did not make any payments on his claim and contended your damages did not exceed his applicable deductible(s).

4. At some point, he spoke with a person who was walking around his neighborhood attempting to sign people up to make hurricane claims.

5. He did not recall who he spoke to or what company they were affiliated with. He likewise [did] not recall if they indicated they were working on behalf of a law firm.

6. Thereafter, in May 2022, McClenny Moseley & Associates sent a demand letter to Allied Trust on his behalf.

7. He did not know about this demand letter at the time it was sent.

8. The demand letter contained an estimate prepared by Disaster Solutions, which estimated the damages to his home due to Hurricane Ida to be $119,777.84.

9. He disagrees with the amount of this estimate, in that it exceeds the damages to his home.

10. To his knowledge, he was never a client of McClenny Moseley & Associates, nor did he authorize them to send a demand letter to Allied Trust on his behalf.

11. This demand letter was sent without his consent.

12. To his knowledge, he never signed any contract with McClenny Moseley & Associates regarding this claim.

13. He never spoke with anyone with McClenny Moseley & Associates regarding asserting a claim against Allied Trust for Hurricane Ida damages prior to May 2022.

14. To his knowledge, he has never directly communicated with any attorney affiliated with McClenny Moseley & Associates about this claim or any other matter.

15. He attempted to call contact McClenny Moseley & Associates several times following the submission of their demand to get them to withdraw it. However, he could never contact them and was only able to leave voicemails and/or speak with a secretary or operator.

16. Eventually, he spoke with someone with McClenny Moseley & Associates and told them he wanted to drop the claim. He does not know who he spoke with when he made this statement.

17. In August 2022, he was served with a complaint filed by Allied Trust in federal court.

18. Through this complaint he learned for the first time that McClenny Moseley had made a demand to Allied Trust on [his] behalf.[11]

The allegations reported to and accepted by Judge Morgan on December 1, 2022 confirm a disturbing trend also revealed by Plaintiff in the instant matter and by the Caffarels – that MMA in multiple files has falsely indicated to insurance companies that they represented people when no such representation existed.   The *Ripoll* matter is especially concerning as there is an additional allegation that the estimate provided by MMA exceeded the damages to Mr. Ripoll's home.  If this allegation is true, then this could present a violation of La. R.S. 22:1924.

---

[11] Order Dismissing Case Without Prejudice, December 15, 2022, Case No. 2:22-cv-02811, Rec. Doc. No. 24, Exhibit "11".

### III.     MMA HAS BEEN ACCUSED IN OPEN COURT OF CRIMINAL FORGERY

Mr. Ripoll's factual allegations indicate a potential violation of Louisiana's insurance criminal statutes.  However, Mr. Ripoll's statement is not the only time that MMA has been accused of a criminal violation.  In a lengthy hearing on December 13, 2022 before the Honorable James David Cain, Jr. of the Western District of Louisiana, MMA was accused of criminal forgery of a mortgage holder's endorsement on a check that was deposited into MMA's account.[12] Beginning at Page 57 of the transcript is a detailed discussion of which law firm actually represents an insured homeowner, Mr. Melvin Addison, II, against his insurer, Allstate.  Judge Cain was concerned that two lawsuits had been filed on Mr. Addison's behalf.  One lawsuit was filed by attorney Tom Filo, Case No. 2:22-cv-3547 and the other by Mr. Huye and MMA, Case No. 2:22-cv-3431.  Mr. Addison testified in open court on Page 87 of the transcript that he did not sign the MMA contract and that he did not want MMA to represent him.  On Page 89 of the transcript, Judge Cain ordered MMA to transfer the entire amount MMA received from Allstate to the trust account of Mr. Filo's firm.

As part of that discussion, on Pages 70 through 85, the live testimony of Kermith Sonnier, the representative of the mortgage holder, Accord Services, makes clear that Mr. Sonnier did not give permission for MMA to endorse the Allstate check on his behalf.  Lake Charles attorney, Todd Townsley, states on Page 69:

> I think it's a criminal forgery, and I want to make a record.  And my client is here and he did not give them permission, nor do they have a power of attorney for him. I'd like to call Mr. Kermith Sonnier to the stand.[13]

Mr. Sonnier and Mr. Addison's sworn testimony in open court support Mr. Townsley's assertions and, while disturbing standing alone, is consistent with the circumstances reported by

---

[12] Transcript of December 13, 2022 hearing before the Honorable James David Cain, Jr., Exhibit "12".
[13] *Id*. at pages 69-70.

Plaintiff in the instant case, the Caffarels, and Mr. Ripoll.  However, the chaos created by MMA does not stop there.

## IV.    MMA HAS FILED NUMEROUS LAWSUITS AGAINST INSURANCE COMPANIES WHO HAVE NOT ISSUED POLICIES OF INSURANCE TO THE PLAINTIFFS

MMA has also engaged in a systematic practice of filing lawsuits for which there is no factual basis.  In the Western District alone, there are at least twenty-five (25) documented instances of Hurricane lawsuits filed on behalf of homeowners against insurance carriers that either (1) had no policy in effect at the time of the alleged loss event; (2) had never issued a policy of insurance to the homeowner; or (3) did not ever issue a policy of property insurance to anyone in Louisiana at any time.  These twenty-five (25) lawsuits are likely a small sample size of the total number of completely frivolous lawsuits filed by MMA in the Western District because of Hurricanes Laura and Delta

In each of the subject frivolous lawsuits, MMA makes allegations that the matters in controversy exceed the sum or value of $75,000, exclusive of interest and costs.  In these suits, MMA alleges both general and special damages, statutory penalties and attorney's fees, legal interest, mental anguish and emotional distress. Unfortunately for the plaintiffs in these twenty-five (25) cases, any claims arising out of Hurricanes Laura and Delta the homeowners may have had against their actual insurer are now prescribed.[14] Further, the frivolously filed lawsuits against the wrong insurers cannot be used to extend the prescriptive period.[15] This presents a substantial

---

[14] *Melendez v. Southern Fidelity Insurance Company*, No. 20-689, 503 F. Supp. 3d 504, 509-510 (E.D. La. 11/25/2020); *followed by Camelia Condominium Association, Inc. v. United Specialty Insurance Co.*, No. 6:21-CV-04460, 2022 WL 838967 at *3 (W.D. La. March 21, 2022)  and *Mansfield Road, LLC v Great American Insurance Company of New York*, No. CIV. A. 21-1719, 2022 WL 16857018 at *5 (W.D. La. November 22, 2022).

[15] The Eastern District has previously explained that the naming of the wrong insurer does not allow relation back for the purposes of tolling statute of limitations.  *Fassbender v. Louisiana Citizens/First Premium Ins.*, No. CIV.A.11-111, 2011 WL 2610955, at *4 (E.D. La. July 1, 2011).

loss for these homeowners, who, in addition to the wrongfully sued insurers, are the true victims of MMA's actions in these matters.

The lawsuits identified by undersigned counsel are as follows:

1. *Bobby Dyer v. Allied Trust Insurance Company*, Case No. 22-4961;

2. *Abigail Zeno v. Allied Trust Insurance Company*, Case No. 22-4565;

3. *Michael Hataway v. Allied Trust Insurance Company*, Case No. 22-4740;

4. *Michael Tolliver v. Southern Vanguard Insurance Company*, Case No. 22-4878;

5. *Johnny Venzant v. Homeowners of America Insurance Company*, Case No. 22-4074;

6. *Katrina Charles v. Safepoint Insurance Company*, Case No. 22-4026;

7. *Krystle Mahoney v. Safepoint Insurance Company*, Case No. 22-3944;

8. *Tiffany Davis v. Safepoint Insurance Company*, Case No. 22-4048;

9. *Marie McCoy v. Safepoint Insurance Company*, Case No. 22-4788;

10. *Ona Sheppard v. Safepoint Insurance Company*, Case No. 22-4673;

11. *Alvin Davis v. United National Insurance Company*, Case No. 22-4585;

12. *Sammy Hunter v. United National Insurance Company*, Case No. 22-3447;

13. *Roland McClain v. United National Insurance Company*, Case No. 22-4897;

14. *Trahan Melvin v. United National Insurance Company*, Case No. 22-4540;

15. *Shirley Rhine v. United National Insurance Company*, Case No. 22-4601;

16. *Melissa Rollins v. United National Insurance Company*, Case No. 22-4895;

17. *Claudia Thomas v. United National Insurance Company*, Case No. 22-3993;

18. *Sallie Washington v. United National Insurance Company*, Case No. 22-4902;

19. *Jason Corn v. American Reliable Insurance Company*, Case No. 22-3734;

20. *Lillian Cherry v. United National Insurance Company*, Case No. 22-4731;

21. *Wayne Compton v. United National Insurance Company*, Case No. 22-4827;

22. *Linda Mae v. United National Insurance Company*, Case No. 22-4697;

23. *Naomi Petite v. United National Insurance Company*, Case No. 22-4744;

24. *Willie Butler v. United National Insurance Company*, Case No. 22-4106; and

25. *Jean Pruitt v. United National Insurance Company*, Case No. 22-4908.

These lawsuits are likely not the only ones filed in the Western District of Louisiana for which no policy was in effect at the time of the loss. Mr. Huye admitted in open court on December 13, 2022 that "we have multiple other opposing counsels that are reaching out to us"[16] on this issue. The insurers listed above represent only a small percentage of the Louisiana homeowner's insurance market share. Indeed, there are numerous lawsuits with similar issues that have been filed in state court against non-diverse insurers and in the United States District Court for the Eastern District of Louisiana. In order to fully determine the extent of the harm caused by MMA on this issue, it would be appropriate for the Eastern District of Louisiana to issue an Order for both MMA and all insurers to provide information regarding the numbers of claims asserted by MMA for which there was no policy in place at the time of the loss.

### A.   THE HARM CAUSED BY MMA TO THE PEOPLE OF LOUISIANA IS IN THE MILLIONS OF DOLLARS

The two-year prescriptive period for Hurricane Laura expired on August 28, 2022, and for Hurricane Delta on October 10, 2022 pursuant to the terms of the policies, La. R.S. 22:1311(F)(2) and La. R.S. 22:868(B). Thus, the deadline for filing suit against the proper insurer in each of these referenced cases has long since passed. Taking MMA at its word[17], if each of these plaintiffs

---

[16] Transcript of December 13, 2022 hearing, Page 124, Exhibit "12".

[17] The Honorable James David Cain, Jr. finds taking MMA at its word difficult. *See* Exhibit "12": Page 36, line 1, "You do not have the trust of the Court."; Page 149, lines 18-22, "I don't trust you guys. That's the bottom line. I don't trust you. I don't believe your clients are being informed the way they should. I don't believe you've done your due diligence."; Page 156, lines 12-13," I just don't have faith and trust in y'all right now."

suffered at least $75,000 in compensable damages, then at least $1,875,000 (25 times $75,000) in harm has been committed upon the people of Louisiana.  Because the number of improperly filed lawsuits filed are much greater than reported above, then the damages suffered by the people of Louisiana collectively are also much greater.

### B.   DYER HEARING AND SANCTIONS ORDER

In the *Dyer* matter listed *infra* as the first case on Page 21, the Honorable David C. Joseph of the United States District Court for the Western District of Louisiana issued a Rule to Show Cause hearing, which took place on December 28, 2022, as to why monetary sanctions should not be imposed pursuant to the Court's inherent authority regarding: (i) MMA and Mr. Huye's unexplained and unexcused failure to appear on December 21, 2022, for a hearing on Allied's Motion for Leave to Lift Stay as ordered by Judge Joseph via electronic minute entry; and (ii) Allied's allegations that MMA failed to properly investigate its claims before filing suit as required by Rule 11(b) of the Federal Rules of Civil Procedure.

During the hearing[18], the Court directly engaged in dialogue with Plaintiff, Bobby Dyer, who was present in Court telephonically, as well as took evidence and heard oral argument from counsel. The Court found that MMA failed to (i) properly investigate this matter prior to filing suit; (ii) timely comply with the October 20, 2022, Order by Judge James D. Cain, Jr. to investigate the claims at issue; and (iii) appear at the initial hearing set by the Court on December 21, 2022. On January 17, 2023, Judge Joseph sanctioned MMA $15,914 in attorneys' fees and costs incurred by Allied as a result of MMA's wrongful conduct.[19]

---

[18] Transcript of December 28, 2022 hearing on Western District of Louisiana Case No. 5:22-cv-04961, Exhibit "13". It is of note that Mr. Huye could not answer Judge Joseph's questions as to how much equity he owned in MMA, even though he reported to the Court that he is owns a principal interest in the firm.
[19] Order, Western District of Louisiana Case No. 5:22-cv-04961, Exhibit "14".

## V.      MMA HAS SUBSTITUTED PERSONAL SERVICE WITH TECHNOLOGY

MMA has chosen to commoditize its process using technology *in lieu* of personally handling each matter and investigating each claim on its own merits.  As is shown below, MMA has created a circumstance by which it is impossible for the four attorneys on these files to properly process these matters in accordance with Fed. R. Civ. P. 11.

### A.      Disaster Solutions Video

In a video filmed on August 26, 2022 and posted on Facebook by MMA partner company Disaster Solutions on August 30, 2022, Mr. Huye bragged about the huge volume of litigation filed by MMA. Mr. Huye states "Over the past four days we've filed 1,700 lawsuits. Have about a hundred left. And a rounded out a flat 1,800." This is an unprecedented number of lawsuits filed by one firm in the history of Louisiana. It is more incredible considering that MMA did not even register as a law firm in Louisiana until October 2020 and does not even have an office in Lake Charles, Louisiana. As confirmed by the video, MMA's Louisiana office is located on St. Charles Avenue in New Orleans.  As indicated *infra* on Page 17, Disaster Solutions is the entity hired by MMA that created the $119,777.84 estimate Mr. Ripoll states exceeds the amount of his damages.

Mr. Huye also indicates "We signed a lot of these clients just over the past month", which references the month of July 26, 2022 to August 26, 2022. Mr. Huye further brags "we broke the Western District of Louisiana" in describing the Pacer filing system. The Facebook video at issue can be accessed at https://fb.watch/gKjgd5rqQt/.

### B.      Zach Moseley YouTube Interview

As further evidence that MMA knew what it was doing as part of an organized scheme, we reference for your review a YouTube posting entitled *Federal Judge DEMOLISHES McClenny and Moseley over 1600 Insurance Claims*. This can be seen at https://www.youtube.com/watch?v=uHHeC2I-o40.  MMA principal Zach Moseley ("Moseley")

tries to explain MMA's behavior at the 11:00 minute mark of the video and **admits his firm has signed up 15,000 cases**, which include the Hurricane Laura/Delta lawsuits, **but most of which are related to Hurricane Ida**. Mr. Moseley brags of the "millions of dollars we've invested in technology and AI". Mr. Moseley further states that "we've built the processes" to handle large numbers of files.

Mr. Moseley proudly boasts that "Our goal is to help 50,000 people in Louisiana." Mr. Moseley compares MMA to Mark Zuckerberg, the founder of Facebook, in stating "I believe it was Zuckerberg that said, 'change is always met with resistance'." Finally, Mr. Moseley admits "**My firm is doing things that have never been done. In quantities that have never been done**." It is of note that Mr. Moseley is not a licensed Louisiana attorney and works through Louisiana Managing Partner Mr. Huye in executing this business model.

Just as MMA does in Record Doc 27-1, MMA lays blame at the feet of its clients to avoid responsibility for their actions.  At the 15:47 mark of this video, Mr. Moseley states "As you probably are aware, I as an attorney don't have the right to file a lawsuit on behalf of my client. It is the client that tells me to do that, and I have to do what the client says."

C.    **The Advocate Article**

In a November 8, 2022 article in The Advocate entitled *Louisiana judge lashes out after Houston firm files 1,600 hurricane-related suits in Lake Charles*[20], Moseley continues boasting about MMA's purposeful use of technology to sign up unprecedented numbers of clients.

"We're a technology company, essentially," Moseley, a partner at the firm, said in a later interview. "We spent millions of dollars on automation and AI [artificial intelligence]. Our firm can handle an extraordinary amount of cases with just the power of technology." "We're actually

---

[20] The article can be found online at https://www.theadvocate.com/lake_charles/article_f5e1c374-5ef7-11ed-8eb8-2702b0a2b360.html.

the biggest, strongest **machine** helping these clients. Without us, these clients would have nothing," Moseley said.

## VI.   MMA HAS ENGAGED IN IMPROPER SOLICIATION USING TEXT MESSAGES IN THE EASTERN DISTRICT VIA VELAWCITY

As stated above in a public forum by Zach Moseley, MMA has signed up at least 15,000 cases in Louisiana.  This begs the question as to how this law firm, which did not register in Louisiana until October 26, 2020,[21] has signed up more "clients" than any other law firm in any other instance in the history of Louisiana.  One way this was accomplished is through the use of unsolicited text messages sent in violation of the Louisiana Rules of Professional Conduct.

At approximately 7:01 a.m. on Sunday, July 17, 2022, Katherine Monson, undersigned counsel's wife, received an unsolicited text message from a number identified as "+14307032100". The unsolicited text message, a copy of which is attached for your review, states as follows:

> You qualify for Hurricane Ida owed claim_$$$!  Pick  Yes to the first 3 questions and NO for attorney to claim…D7.tap622.com  St

Upon receipt of this text message, Ms. Monson was confused as she was not familiar with the phone number that texted her.  The unsolicited text message did not identify the sender and did not identify any lawyer or law firm.  There was no location of practice identified, nor was there a Louisiana State Bar Association Lawyer Advertising Filing Number supplied.  Rather there was a promise of money made if certain answers were provided at the website that was enabled by the link "D7.tap622.com"

Ms.  Monson  clicked  on  the  link,  which  sent  her  directly  to  a  website www.DisasterClaimHelp.com. On the first page of this website, again, there is no mention of a

---

[21] Louisiana Secretary of State Detailed Record for McClenny, Moseley & Associates, PLLC, Exhibit "15".

law firm name or attorney involved.   Rather, there is a series of questions presented to the viewer and is listed as a series of "Steps".

Step 1 asks: "Did you suffer damage to your home or business (even minimal damage) from a hurricane?  Clicking "YES" to Step 1 as instructed by the text message brings you to the second step.

Step 2 asks: "Did you own your home or business? Clicking "YES" to Step 2 as instructed by the text message brings you to the third step.

Step 3 asks: "Did you have homeowners insurance during the time of the incident?" Clicking "YES" to Step 3 as instructed by the text message brings you to the fourth step.

Step 4 asks: "In what state did the damage occur?" and provides the options of Louisiana, Mississippi, and Texas.  Once the state is entered, then you are taken to the fifth step.

Step 5 instructs: "Briefly describe what happened."  Since Hurricane Ida was the subject of the unsolicited text message, "Hurricane Ida" was mentioned.  The website then takes you to the sixth step.

Step 6 asks: "Do you currently have an attorney for this claim?"  This is the first instance on the website that suggests that it is an attorney advertisement.  Yet, no lawyers, law firms, or locations are identified.  Clicking "No" as instructed takes you to the Final Step, in entering the user's contact information with a button entitled "SEE IF I QUALIFY".

Once the "SEE IF I QUALIFY" button was clicked, Ms. Monson instantly received a second text message at 8:43 a.m. from phone number "+1(318) 536-6739".  This text message states as follows:

> Thank you for contacting McClenny Moseley & Associates.  Our representatives will be calling you shortly about your Storm Damage claim.  Reply STOP to opt-out.

At no point in the entire process, either in the first text message or the website, was MMA or any of its attorneys subject to this complaint identified.  Accordingly, the second text message is false and misleading as at no time did Ms. Monson ever contact this law firm or any of its attorneys.  However, as promised, a few minutes later, on July 17, 2022, a "representative" of MMA called Ms. Monson and attempted to have her sign an online retention agreement, which Ms. Monson did not complete.  The caller told Ms. Monson the call was recorded and thus, the recording should be available from MMA.

Upon noticing that Ms. Monson did not execute a retention agreement, Ms. Monson received another unsolicited phone call from MMA, which she did not answer, and a voicemail was left for her.  The voicemail states as follows:

> Hello, this is McClenny Moseley & Associates.  We're reaching out because you recently completed an intake with our representatives and were sent legal documents for review and signature.  We're following up to help answer any questions or concerns you may have.  Please note that these documents are time sensitive and the sooner we can process them to our legal team, the quicker your claim can proceed.  Please call us back so we can help assist you with the completion of these documents at 833-991-1499[22].  Thank you for your time and have a wonderful day.

On Monday, July 18, 2022, at 7:56 a.m., Ms. Monson received another unsolicited text message, a copy of which is attached, stating:

> We recently emailed you documents to sign concerning your Storm Damage claim.  Please call 856-681-4176 for questions or assistance.[23]

Ms. Monson has also received identical text messages on July 27, 2022 at 10:10 a.m., July 30, 2022 at 10:12 a.m. and August 2, 2022 at 10:12 a.m., each stating:

---

[22] 833-991-1499 is not listed as MMA's phone number.  On MMA's website, www.mma-pllc.com, the phone number is listed as (844) 662-7552.
[23] Text messages received by Katherine Monson, Exhibit "16" *in globo*.

We're here to help you complete the document signing process concerning your Storm Damage claim.  Call us anytime at 856-681-4176 – McClenny Moseley[24]

In this instance, MMA used the unsolicited text communications, telephone calls, emails, and the website www.DisasterClaimHelp.com in order to improperly solicit an attorney-client relationship with Ms. Monson.  At no point did Ms. Monson have a family or lawyer-client relationship with any of these attorneys.

As stated in the above voicemail transcript, the "intake" completed with a "representative" was undertaken by a company called Tort Network, LLC d/b/a Velawcity.  An example of Velawcity's completed Intake Survey was provided by Mr. Huye in the middle of the December 28, 2022 *Dyer* hearing to undersigned counsel[25]  The Intake Survey, dated June 30, 2022 contains the yellow Velawcity "V" logo and the Velawcity ID of a025G00000q0AXrQAM.  Notice that nowhere on the Intake Survey is there any evidence that MMA had anything to do with that document, which Mr. Huye indicates is "the main piece of information we had."[26]

Ms. Monson also received over 120 emails from Velawcity, one each day, asking her to execute an Employment Contract.[27]  Rather, the Velawcity representatives sent contracts via email to Ms. Monson on a daily basis from 8:54 a.m. on July 17, 2022 for at least 120 days  in order to sign her up as a client for MMA. These emails encourage Ms. Monson "to review and sign a document." Again, these emails and communications were not sent by Mr. Huye or MMA, but were sent by the Velawcity representatives, who first called Ms. Monson early Sunday, July 17, 2022. The representative informed Ms. Monson in this phone call that it was being recorded. As

---

[24] *Id.* Notably, 856-681-4176 is not listed as MMA's phone number.  On MMA's website, www. Mma-pllc.com, the phone number is listed as (844) 662-7552.
[25] Velawcity Intake Form, Bobby Dyer, June 30, 2022, Exhibit "17". Exhibit "13", Pages 11- 14 and 24.
[26] Exhibit "13", Page 13, line 22 through Page 14 line 14;
[27] Unsolicited emails from MMA to Katherine Monson, Exhibit "18" *in globo*; Employment Agreement attached to the emails, Exhibit "19".

such, Velawcity and/or MMA should be able to produce the phone call recording, which will further serve to confirm the improper solicitation.

The fact that Velawcity is seeking to obtain signed contracts in advance of any communication from anyone employed by MMA proves the unethical and illegal scheme. Undersigned counsel is concerned and asks the following question that must be investigated and answered: is MMA paying for signed contracts from Velawcity?

## VII.  JUDGE CAIN MMA ORDER AND WDLA HEARING TRANSCRIPT

On October 20, 2022. Judge Cain conducted a hearing regarding MMA's Hurricane Laura/Delta filings. After this hearing, on October 21, 2022, Judge Cain issued an Order, a copy of which is attached for your review. In this Order, Judge Cain "…determined that there are filings by Plaintiffs that have already settled lawsuits, duplicate filings, and filings for damage to property that is outside the typical geographical area where reported damage was caused by Hurricanes Laura and Delta. Consequently, the Court has concerns about this law firm's representation and due diligence in preparing their pleadings in the vast number of Hurricanes Laura/Delta lawsuits filed in the Western District of Louisiana." Accordingly, Judge Cain issued sanctions against MMA and took the unprecedented action of staying 1,642 cases filed by this firm.[28]

## VIII.  MMA'S ACTIONS IN THE CONSOLIDATED MATTERS

### A.     MMA's Second Filed Lawsuit and Attempted Dismissal

Plaintiff, in her Memorandum in Support, lists in detail how MMA was not her attorney as of the date she signed her LAW FIRM ELECTION FORM executed on June 28, 2022[29]  Yet on December 7, 2022, MMA filed Case No. 2:22-cv-04927, even though the firm did not represent

---

[28] Transcript from October 20, 2022 hearing, Exhibit "20"; Order staying MMA cases in the Western District of Louisiana, Exhibit "21".
[29] LAW FIRM ELECTION FORM, June 28, 2022, Rec. Doc. 20-8.

Plaintiff. Undersigned counsel filed an Answer to the second filed litigation on January 11, 2023.[30]

The following day, MMA forwarded an email asking whether undersigned counsel had any opposition to MMA filing a Motion to Dismiss Without Prejudice. When undersigned counsel objected to the pleading, Mr. Huye asked "Are you asking us to pay your cost of defense? Please be more specific so that we may work with you."[31] Uninterested in the peculiar offer of payment made by Mr. Huye, undersigned counsel ceased communications.

### B.      MMA's Response to Motion to Nullify and Exclude Appraisal

This past Friday, MMA took the further unusual step in filing a Response to Motion to Nullify and Exclude Appraisal, in which it explicitly stated that "MMA has no objection to any of the relief requested in Plaintiff's Motion," which relief is based upon MMA's directly improper behavior. Yet, MMA indicates that "Plaintiff provided written authorization to MMA on July 8, 2022, both to invoke the appraisal process and to file suit on her behalf." MMA initially did not provide any support for this statement, causing this Honorable Court to issue an Order requiring MMA to produce the "written authorization . . .to invoke the appraisal process and to file suit on [plaintiff's] behalf."[32]

### C.      MMA's Response to Order Evidences Improper Communications with Plaintiff

On Sunday, MMA filed a Response to Order,[33] which attaches a document dated July 8, 2022[34]. This document is correspondence sent by Mr. Huye to Trichia [*sic*] Franatovich and references "Status of Claim regarding information needed for **Hurricane, Appraisal & Lawsuit**" (emphasis in original). It is telling that MMA cannot even spell their own purported client's first

---

[30] Case No. 2:22-cv-04927, Rec. Doc. 5.
[31] Emails between MMA and The Monson Law Firm, January 12-13, 2023, Exhibit "22".
[32] Rec. Doc 26.
[33] Rec. Doc. 27.
[34] Rec. Doc 27-1.

name correctly either in this correspondence or in the second filed lawsuit.  This document purports to be signed by Plaintiff and gives MMA the authority to demand appraisal and file suit.

This document is problematic for several more reasons.  First, the document is not based upon MMA or Mr. Huye's personal representation of Plaintiff.  The letter first asks Plaintiff what hurricane caused the damage.  This is information that should already be known by MMA at this point.  More importantly, MMA and Mr. Huye should already have known that Plaintiff had signed the LAW FIRM ELECTION FORM on June 28, 2022, essentially firing MMA and Mr. Huye.  Accordingly, Mr. Huye by this correspondence directly violated Louisiana Rules of Professional Conduct Rule 4.2 by communicating with Plaintiff, who had clearly chosen Daly & Black as her law firm to the specific exclusion of MMA.

Second, Page 2 of Rec. Doc. 27-1 clearly evidences the method MMA improperly communicated with Plaintiff.  On July 8, 2022 at 7:42:08 p.m., MMA sent Plaintiff an "SMS opt-in request", an unsolicited text message, to her cell phone number.  Plaintiff replied "Yes" to this request at 7:48:24 p.m. on July 8, 2022 and completed Rec. Doc 27-1 at 7:53:44 p.m. on July 8, 2022.[35]  Quite like the way in which MMA improperly reached out directly to Ms. Monson via text message, MMA improperly texted Plaintiff even though she was represented by other counsel.

Third, this document misleads Plaintiff as to the status of the law as it states that the appraisal process "will pave the way for the additional benefits which may also be owed to you in the form of bad faith penalties, attorney fees, and costs as a result of any delay in your insurance company's payments."[36]  Rather, the Eastern District jurisprudence is clear that "failure to pay

---

[35] *Id.* at page 4.
[36] *Id.* at page 2.

Plaintiff the amount of the appraisal award before the award was given does not constitute evidence of bad faith."[37]

Fourth, this document was also sent via email to "legaldocs@apexroofs.com".  This email address does not belong to Plaintiff, but rather to Apex Roofing, whose email address is www.apexroofs.com.  This document further provides factual support for the improper relationship between MMA and Apex Roofing.  If Plaintiff truly was the client, then a communication such as this detailing legal strategy and providing legal advice which is subject to the attorney-client privilege should not be shared with a mere roofing company.  Instead, in this instance, Apex Roofing is the true client and Plaintiff is a victim of the same illegal scheme that befell the Caffarels.

Fifth, the email address legaldocs(0)@apexroofs.com is identified under the title "Signer Information" at the bottom of Page 5 on Rec. Doc. 27-1 and this same email address is listed under "Signing History" on Page 6.  Further, Page 6 identifies the IP address 12.94.176.218 as being from Indian Springs Village, Alabama, which is only minutes from Apex Roofing's headquarters.  It is this IP address which falls under the Document History on Page 6 as "Terms and conditions accepted by 'Trichia Franatovich'" at 19:42:48, "Document Under Review by 'Trischia Frantaovich'" at 19:42:49, and "Terms and Conditions accepted by 'Trichia Frantaovich'" at 19:44:28.  This calls into question as to why an unknown person in Indian Springs Village, Alabama is accepting the terms and conditions of an electronic communication sent to Plaintiff.  Allied requests this Honorable Court require MMA to provide the identity and contact information of the individual(s) behind IP address 12.94.176.218.

---

[37] *Wells v. Southern Fidelity Insurance Company, et al*., Civ. A. No: 18-16962019 WL 118015 at*4 (E.D. La. Jan. 7, 2019).

We now know why Mr. Huye initially withheld Rec. Doc 27-1 from the attention of this Honorable Court.  As has been revealed through these pleadings, MMA indicated that they represented Plaintiff through the solicitation provided by MMA's client, Apex Roofing.  Even if MMA can produce an "AssureSign" engagement agreement with Plaintiff, such an agreement was improper as MMA had a clear conflict through its ongoing representation of Apex Roofing. Further, any such engagement agreement, if it exists, was cancelled by Plaintiff's executing the LAW FIRM ELECTION FORM on June 28, 2022.  Further, Mr. Huye wanted to hide the fact that their communication to Plaintiff regarding case strategy was being shared with Apex Roofing, who may have been the party who actually executed Rec. Doc. 27-1, instead of Plaintiff.

This is also not an isolated incident.  Attorneys, both plaintiff and defense, throughout south Louisiana have dealt with numerous instances in which MMA has claimed to represent individuals who were in fact represented by other counsel.  Multiple insurers have many instances in which their insureds have indicated that they did not know they were being represented by MMA. If the Eastern District seeks input from the other members of the bar and insurance companies, it would be surprised by the number of responses it receives.

## IX.   ALLIED HAS BEEN HARMED BY MMA'S ACTIONS

At all times through the handling of Plaintiff's claim, Allied has acted in good faith, paying Plaintiff over $100,000.00 and participating in a contractually and legally mandated appraisal process it believed to be demanded with the authority of counsel.  MMA has confused the entire process by filing the second suit.  MMA further confuses the issue by alleging in the same pleading both that it had authority to file this lawsuit but also that MMA is withdrawing as counsel because Plaintiff has decided to be represented by other counsel.

This matter is currently set for trial on May 1, 2023 and the discovery deadline is set for February 10, 2023.  Other deadlines have passed, and more are quickly approaching.  Allied is now prejudiced as the status of the appraisal, which has formed the basis of Allied's defense considerations, is now called into question through no fault of Allied.  If the instant Motion is granted, then the entire costs incurred by Allied associated with both the appraisal process and litigation to date will have been lost.  Allied also submits that the fees and costs responding to the instant Motion should be awarded against MMA should the instant Motion be granted in whole or part.

Quite simply, the allegations set forth by Plaintiff in the instant motion and the allegations set forth by MMA cannot be reconciled.  Allied requests this Honorable Court set an evidentiary hearing to get to the bottom of this confusing counsel conundrum.  Until the actions of MMA and Plaintiff can be determined on the record, Allied will not have a considered basis to oppose or consent to the instant Motion.

Allied opposes Plaintiff's requested remedies to the extent that it may be determined that Plaintiff approved entering the appraisal process and voluntarily participated in that process.  As Plaintiff's Motion operatively is a Motion for Partial Summary Judgment combined with a Motion *in Limine*, Allied suggests that there are contested issues of fact precluding the granting of the dispositive aspects of the motion and that Allied would be unduly prejudiced from being able to put forth evidence of its good faith conduct to the jury if the instant Motion is granted as prayed for.

## X.   MONETARY SANCTIONS ARE INSUFFICIENT TO CORRECT MMA'S BEHAVIOR

MMA has stated publicly that it spent millions of dollars in creating a complex technology-based system through which they illegally and unethically recruited clients. The text message

solicitation to Ms. Monson and Plaintiff is undoubtedly one of many that were sent as a part of this

illegal scheme.  MMA further partnered with its client, Apex Roofing, to make claims on behalf

of people without their knowledge. MMA are the architects and perpetrators of these rogue

schemes, which have already involved at least 15,000 residents of Louisiana, to the detriment of

the entire legal profession. If this behavior is authorized, thousands of additional people will

continue to be harmed. Immediate action is necessary before MMA achieves its stated goal of

signing up 50,000 residents and before other out-of-state law firms begin emulating this behavior.

MMA has already been sanctioned almost $16,000 by the Western District of Louisiana

for violating Rule 11.  In this case, Judge Joseph stated as follows:

> Mr. Huye, I'm not -- I know that you've been -- you've dealt -- from reading the
> transcript for this case preparing for today, I know you've dealt with Judge Cain
> and that he's been upset.  I'm not really upset.  What I am is very disappointed that
> we're having to deal with this.  This is not what we expect in federal court.  It's not
> what we expect as lawyers from our counsel that we have here.  We serve the public.
> We expect attorneys to assist us in doing that, and when we see occasions where
> we feel like the people that we serve, who are the citizens here in the Western
> District, are being taken advantage of or their interests are not being served by
> attorneys that have taken an oath to represent them, to put their interests first, it is
> very disappointing.
>
> You've told me here today you're going to scrub the cases.  I encourage you to do
> that.  I also would encourage you next time that needs to happen before you file
> lawsuits because not only does it waste a lot of resources for a lot of people dealing
> with lawsuits that were not properly investigated before they were filed, but also
> potentially -- it potentially loses --it potentially loses claims that should have been
> filed in lieu of ones that should not have been filed.[38]

Despite the warnings and instructions from Judge Cain on October 20, 2022 and December

13, 2022 and from Judge Joseph above, MMA has brought its improper behavior to the Eastern

District.  Under any normal circumstance, a monetary sanction by this Honorable Court would be

adequate to get the attention of a law firm such that the improper behavior can be rectified and

---

[38] Exhibit "13" page 32.

corrected.  In this case, monetary sanctions against MMA representing only the fees and costs incurred by Allied Trust in the defense of this matter will be insufficient to correct MMA's behavior.  Indeed, the filing fees alone for the 1,642 cases MMA filed and that are subject to the Western Districts' stay Order exceed $660,000.  Even the filing fees are a drop in the bucket compared to the millions of dollars Mr. Moseley has bragged about spending on automation and artificial intelligence.  Accordingly, even monetary sanctions based on the conduct of this case alone, while appropriate, would amount to a rounding error in MMA's budget and would not serve the intended purpose of Fed. R. Civ. P. 11(c)(4), which limits sanctions "to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated" of correcting MMA's wrongs.

Quite simply, a more substantive approach is needed.  Just last month, the Florida Supreme Court permanently disbarred attorney Scot Strems.[39]  Of note, the Strems Law Firm ("SLF") by 2016 had three litigation attorneys with each managing approximately 700 cases.[40]  The firm's inadequate staffing and lack of sufficient office procedures resulted in client neglect, case dismissals, frustrated judges, and costly sanctions on a near weekly basis.[41]  Mr. Strems failed to responsibly manage SLF and hire enough attorneys to handle the mounting case load.[42]  Additionally, he failed to ensure that SLF lawyers complied with rules regarding reasonable diligence and promptness[43]  "Further, the record demonstrates that SLF had a larger pattern of consistently failing to adhere to deadlines and disregarding court orders."[44]  SLF was also found

---

[39] *Florida Bar v. Scot Strems*, 2022 WL 17839513 (Fla. 2022), attached hereto as Exhibit "23".
[40] *Id.* at *1.
[41] *Id.* at *1.
[42] *Id.* at *4.
[43] *Id.* at *4.
[44] *Id.* at *5.

to bring a frivolous case, as evidenced by a sanction order that plaintiffs and their counsel knew or should have known that plaintiffs' claim lacked merit.[45]

Due to the harm caused to the clients in only eight cases, the Florida Supreme Court permanently disbarred Scot Strems.  Unfortunately, Mr. Strems' unethical conduct began over six years prior, causing damage to numerous parties.  As officers of the court generally, undersigned counsel and the Honorable Judges of the Eastern District have the shared responsibility to promote justice and uphold the law and effective operation of the judicial system.  As officers of the court in this particular instance, we have the burden of knowledge of well-documented damage caused to twenty-five (25) plaintiffs totaling at least $1,875,000 in claimed damages.  We know that Plaintiff in the instant case and Steven Ripoll have been harmed in cases before the Eastern District.  We know that Plaintiff. the Caffarels and Ms. Monson have been illegally solicited.  We also know that this firm has signed up at least 15,000 claimants in Louisiana alone and that MMA intends to file thousands of lawsuits in the Eastern District of Louisiana.  Accordingly, we have the opportunity and responsibility to prevent any more Louisianans from being harmed by the actions of MMA. The success of MMA's schemes depends on the complacency of insurers, defense counsel, mediators, the bar association, and the Honorable Judges of the state of Louisiana. The Monson Law Firm, LLC and Allied Trust Insurance Company refuse to be complicit.

For the reasons outlined above, undersigned counsel implores the Eastern District of Louisiana to take serious and decisive action against MMA and its attorneys.  Numerous plaintiffs and defendants have suffered significant harm due to MMA's actions to date and many more will continue to suffer if MMA and its attorneys continue to act as members of the bar of the Eastern District.  Undersigned counsel requests that this Honorable Court refer MMA and its attorneys for

---

[45] *Id.* at *5.

disciplinary proceedings pursuant to Rule 4.2 of the United States District Court for the Eastern District of Louisiana Rules for Lawyer Disciplinary Enforcement.

Respectfully submitted,


*/s/ Matthew D. Monson*
**MATTHEW D. MONSON (25186)**
**THE MONSON LAW FIRM, LLC**
5 Sanctuary Blvd., Suite 101
Mandeville, Louisiana 70471
Telephone:     (985) 778-0678
Facsimile:      (985) 778-0682
Matthew@MonsonFirm.com
***Counsel for Allied Trust Insurance Company***


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 23, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to CM/ECF participating parties. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the non-CM/ECF participating parties.

*/s/ Matthew D. Monson*