UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

*************************************************************

IN RE:  HURRICANE IDA CLAIMS


New Orleans, Louisiana
June 14, 2023


Filed in 22-2552 c/w 22-4927

*************************************************************



TRANSCRIPT OF STATUS CONFERENCE
HEARD BEFORE THE HONORABLE MICHAEL NORTH
UNITED STATES MAGISTRATE JUDGE








Official Court Reporter:     Nichelle N. Wheeler, RMR, CRR
                             500 Poydras Street, B-275
                             New Orleans, Louisiana 70130
                             (504) 589-7775


    Proceedings recorded by mechanical stenography,
transcript produced via computer.

**1**                    **P R O C E E D I N G S**

10:06:17AM **2**                (Call to order of the court.)

10:06:17AM **3**        THE COURT:  All right, everybody.  Thanks for coming.

10:06:22AM **4**    I'm starting to second-guess doing whatever it is that we're

10:06:25AM **5**    doing.  If I had known this many people were coming, I would

10:06:29AM **6**    have scheduled it in the courtyard outside.

10:06:31AM **7**        All right.  Also, if I had looked at the calendar, I

10:06:37AM **8**    probably would have scheduled this for tomorrow, because we

10:06:41AM **9**    have an *en banc* meeting at noon today and some of the things

10:06:46AM **10**    that we will be addressing are issues that we are going to be

10:06:49AM **11**    discussing today.  So, hopefully, sometime tomorrow or in the

10:06:52AM **12**    coming days, we'll have a little bit more clarity and action

10:06:57AM **13**    on case management issues related to the problems that were

10:07:03AM **14**    caused by the enrollment and the taking of cases by McClenny,

10:07:13AM **15**    Moseley & Associates, MMA.

10:07:15AM **16**        Be that as it may, what I'm going to do today is give

10:07:20AM **17**    what guidance and suggestions I can make in light of what I

10:07:26AM **18**    understand to be a number of concerns and problems that you

10:07:30AM **19**    all have had that we have been dealing with over the past few

10:07:34AM **20**    months.  I had thought through the best way to accomplish

10:07:37AM **21**    that, and for reasons that now escape me, I decided that this

10:07:44AM **22**    would be the best forum to try to do that.

10:07:50AM **23**        You know, the jurisdiction of this court and my

10:07:54AM **24**    authority and our authority is limited, as you all know, to

10:07:57AM **25**    the cases that are filed here and the cases that one day will

10:08:02AM  1   be filed.  So to a large extent, the problems and concerns

10:08:06AM  2   and questions that you all have had and have been sharing

10:08:09AM  3   with me and that we've been trying to solve on a case-by-case

10:08:13AM  4   basis together, really addressing those things today, I'm

10:08:19AM  5   limited to giving what guidance and suggestions I can as to

10:08:24AM  6   how to work through some of the problems.

10:08:26AM  7        So what I'm going to do is talk a lot to begin with.

10:08:35AM  8   I'm going to give you all the opportunity to address the

10:08:40AM  9   Court with questions, comments, observations mostly at the

10:08:46AM  10  end.  I've got a number of pages of notes that I wanted to

10:08:49AM  11  work through.

10:08:51AM  12       You know, you all know the issues that I specifically

10:08:56AM  13  stated in the order setting this conference that I was going

10:09:00AM  14  to address.  Those issues, I'm not going to go point by

10:09:04AM  15  point.  They'll be subsumed in some of the observations that

10:09:09AM  16  I make as we go along.

10:09:11AM  17       Just so you all know, I've also received through

10:09:15AM  18  e-mail or filings in the record a number of other questions

10:09:20AM  19  and concerns by lawyers who are handling these cases.  So

10:09:24AM  20  I've also taken those into consideration.  I'm going to try

10:09:28AM  21  to address everything that's been thrown my way that I'm

10:09:33AM  22  aware of.  I'm sure that I will miss some things.  If there

10:09:36AM  23  are questions that you all have that I haven't discussed,

10:09:39AM  24  I'll be happy to try to deal with those within the limits of

10:09:43AM  25  time that we have because I do have to go to the *en banc*

| | | |
|---|---|---|
| 10:09:47AM | 1 | meeting at noon. |
| 10:09:48AM | 2 | So just so you all know, I've been just one of many |
| 10:09:55AM | 3 | judges and lawyers, public entities and many others who has |
| 10:09:59AM | 4 | been actively engaged in trying to solve what is an |
| 10:10:03AM | 5 | unprecedented set of problems that were created by MMA.  Many |
| 10:10:09AM | 6 | of those problems have been addressed, if not solved, but |
| 10:10:13AM | 7 | many remain.  So that's why I decided to convene this status |
| 10:10:17AM | 8 | conference.  I decided that the conference should be on the |
| 10:10:20AM | 9 | record for obvious reasons so that you all can have access to |
| 10:10:25AM | 10 | whatever comments, observations, suggestions or guidance I'm |
| 10:10:28AM | 11 | able to give, and I would encourage you all to do that, to |
| 10:10:32AM | 12 | get a copy of the transcript. |
| 10:10:33AM | 13 | As I said though, not that I'm worried about |
| 10:10:38AM | 14 | everybody in here, but this is not really going to be a town |
| 10:10:42AM | 15 | hall or a lot of give and take or a free for all.  As I |
| 10:10:46AM | 16 | noted, I'm going to make my comments and give you all the |
| 10:10:50AM | 17 | opportunity to ask questions and comment at the end.  When |
| 10:10:54AM | 18 | you do have that opportunity, I hate to have to say this, but |
| 10:10:55AM | 19 | based on my experience, I want to make sure that you all |
| 10:10:58AM | 20 | understand that it is not an opportunity to pontificate or |
| 10:11:05AM | 21 | brag or advertise.  So I don't want to start reading anything |
| 10:11:09AM | 22 | that I said or that we talked about or I should say that is |
| 10:11:11AM | 23 | quoted in the transcript in any sort of advertisement down |
| 10:11:15AM | 24 | the road, because the consequences will not be pleasant if |
| 10:11:20AM | 25 | that happens. |

10:11:21AM 1      All right.  Before we talk about the problems that we

10:11:25AM 2  face, I want to give you all some statistics or some idea

10:11:29AM 3  about how the Case Management Order in this district is

10:11:33AM 4  otherwise working.  As of June 1st, we've had 2,984 Hurricane

10:11:39AM 5  Ida cases filed.  446 pre-CMO cases have opted in to the

10:11:47AM 6  program.  So the CMO became effective at the end of the

10:11:50AM 7  August and 446 cases that were filed before that effective

10:11:53AM 8  date opted into the program.

10:11:56AM 9      As of June 1st, 1,562 cases have been assigned to

10:12:01AM 10  mediators.  That doesn't obviously mean that they've all been

10:12:04AM 11  mediated, but that's how many have been assigned.

10:12:07AM 12      451 MMA cases remain stayed.  I'd say in the order of

10:12:15AM 13  100 or slightly over 100 of those cases -- there were more of

10:12:20AM 14  those cases where the stay has been lifted because new

10:12:23AM 15  counsel has enrolled.  But 451 remain on our docket and

10:12:27AM 16  stayed.

10:12:28AM 17      There are 205 cases stayed for insolvency.  Last

10:12:33AM 18  check, there are 13 insurers -- insolvent insurers associated

10:12:37AM 19  with those cases.  Of the remaining cases, there were 531

10:12:40AM 20  that are not yet right for assignment, but will shortly be

10:12:43AM 21  assigned.

10:12:46AM 22      I guess more importantly or the most important

10:12:48AM 23  statistic from our standpoint is that 86 percent of the cases

10:12:51AM 24  have settled in the CMO, that either through pre-mediation

10:12:57AM 25  settlement, settlement at the mediation, post-mediation

10:13:02AM  1   settlement between the parties or post-mediation settlement

10:13:02AM  2   with the assistance of the presiding magistrate judge.  So of

10:13:06AM  3   the 2,984 cases that have been filed here, thus far only 129

10:13:12AM  4   have been returned to the docket for regular handling.

10:13:16AM  5        What that tells us is, if it were not for the

10:13:20AM  6   problems associated with the MMA cases, we all certainly

10:13:25AM  7   wouldn't be here and I think that the CMO and the Streamlined

10:13:29AM  8   Settlement Program would be working just as smoothly as we

10:13:34AM  9   hoped when we created it.

10:13:36AM  10       All right.  So turning to the issues, before I do

10:13:38AM  11  that, I wanted to recognize and thank Mr. Plattsmier.  I

10:13:43AM  12  asked Mr. Plattsmier to come today from ODC.  I think most of

10:13:48AM  13  you all know Mr. Plattsmier.  I wanted to thank him, not just

10:13:51AM  14  for being here, but also for how responsive and helpful he's

10:13:54AM  15  been to me and with the other judges throughout this process

10:13:59AM  16  and for all the extra work he has put in trying to address

10:14:03AM  17  this unprecedented mess.

10:14:04AM  18       So, Mr. Plattsmier, thank you for being here.

10:14:06AM  19       I noted in the order that this was going to be what I

10:14:09AM  20  call an insurer-centric exercise because at the time I

10:14:13AM  21  thought that most of the issues needing imminent resolution

10:14:14AM  22  revolved around how the insurance companies have and will

10:14:17AM  23  respond to the unique problems that we face based on MMA's

10:14:21AM  24  involvement in these cases.  Upon reflection, I think it's

10:14:25AM  25  more accurate to say that solving these problems will require

10:14:29AM  1   an extraordinary and perhaps unprecedented level of

10:14:34AM  2   cooperation between the insureds and the insurers, counsel

10:14:38AM  3   for both the bar and the courts.

10:14:41AM  4        Speaking for my colleagues, I know that we are ready

10:14:44AM  5   to and will do our part to make everyone's lives as easy as

10:14:49AM  6   humanly possible under the circumstances.  I not only hope,

10:14:52AM  7   but I expect everyone here to do your own part.  Given these

10:14:56AM  8   extraordinary circumstances, I don't know if there's another

10:14:59AM  9   path to success other than cooperation between everyone

10:15:02AM  10  involved.

10:15:04AM  11       What I'm going to say, as I've said before, they are

10:15:08AM  12  not orders.  They are to a large extent guidance and

10:15:12AM  13  suggestions where that is all I can offer.  But, hopefully, I

10:15:16AM  14  can also give you a preview as to how this Court plans to

10:15:20AM  15  handle some of these issues.  We're working on a number of

10:15:23AM  16  processes and adjustments to make the lawyers', the

10:15:27AM  17  litigants', and the Court's lives as easy as possible under

10:15:30AM  18  the circumstances and I assure you that the Court is

10:15:34AM  19  committed to doing just that.  Hopefully, we will have some

10:15:37AM  20  more news for you all in the coming days.

10:15:39AM  21       All right.  The first major issue I wanted to address

10:15:42AM  22  is the question of insurers communicating with their

10:15:46AM  23  insureds.  This has been for months a major issue.  In the

10:15:50AM  24  early days of the MMA stay and suspensions, it's

10:15:56AM  25  understandable that insurers were hesitant to communicate

10:16:00AM 1 directly with insureds who were at least nominally

10:16:04AM 2 represented by that firm by virtue of having received letters

10:16:08AM 3 of representation.  There were a lot of unknowns in those

10:16:11AM 4 first few months and I understand the reticence to reach out

10:16:15AM 5 to insureds.  Most of those unknowns though are now known and

10:16:21AM 6 I don't believe that the hesitancy on the part of the

10:16:24AM 7 insurers to communicate with their insureds is any longer

10:16:28AM 8 merited.

10:16:28AM 9      Here is what we all know.  There are no lawyers left

10:16:32AM 10 at MMA who are licensed to or capable of representing

10:16:38AM 11 claimants in Louisiana.  The Louisiana lawyers for that firm

10:16:42AM 12 have either been suspended or resigned from the firm and from

10:16:46AM 13 all representation of cases pending in this district at least

10:16:48AM 14 and they have disclaimed any interest in proceeding with any

10:16:52AM 15 additional Ida claimants.

10:16:54AM 16      To the extent that the law firm actually represented

10:16:58AM 17 a claimant in this state, that firm does not and cannot

10:17:02AM 18 represent that person any longer.  Accordingly, I believe

10:17:06AM 19 that the facts have established, and in all respects, those

10:17:09AM 20 folks are now unrepresented unless they have retained new

10:17:13AM 21 counsel.  Under these known facts, I cannot conceive of a

10:17:19AM 22 justification from failing to communicate with an insured to

10:17:22AM 23 determine, one, whether MMA actually represented them in the

10:17:26AM 24 first place and, two, how they desire to proceed now that MMA

10:17:31AM 25 cannot represent them going forward.

| | | |
|---|---|---|
| 10:17:32AM | 1 | Now, I'm aware of a number of insurers who have begun |
| 10:17:37AM | 2 | to communicate directly with their insureds. |
| 10:17:42AM | 3 | Mr. Monson, is Mr. Monson here? |
| 10:17:44AM | 4 | Come up to the podium, please, because we've had this |
| 10:17:45AM | 5 | discussion.  I know that some of his clients have begun |
| 10:17:52AM | 6 | directly communicating with their insureds.  I honestly don't |
| 10:17:54AM | 7 | know if that's still a problem among the various insurance |
| 10:17:56AM | 8 | companies who are represented here, but I wanted to ask |
| 10:17:57AM | 9 | Mr. Monson to explain what his clients have been doing in |
| 10:18:01AM | 10 | terms of trying to reach out to their insureds to determine |
| 10:18:01AM | 11 | how they wish to proceed. |
| 10:18:05AM | 12 | Mr. Monson. |
| 10:18:07AM | 13 | MR. MONSON:  Thank you, Judge. |
| 10:18:08AM | 14 | Very early on, we looked at the claims adjuster |
| 10:18:13AM | 15 | standards of conduct, what is preventing or allowing |
| 10:18:16AM | 16 | communication on behalf of a claims adjuster with a |
| 10:18:21AM | 17 | policyholder and there is really nothing in Louisiana law |
| 10:18:24AM | 18 | that prevents that.  The claims adjuster standards of conduct |
| 10:18:28AM | 19 | are contained in 22:1706 and what all it really prevents is a |
| 10:18:32AM | 20 | claims adjuster from communicating with the insured to the |
| 10:18:36AM | 21 | extent that they are going to settle a case with somebody |
| 10:18:39AM | 22 | that they know is represented.  Now that we know that they're |
| 10:18:41AM | 23 | not represented, obviously, the communications can take |
| 10:18:44AM | 24 | place. |
| 10:18:44AM | 25 | When MMA kind of raised its ugly head and some of the |

10:18:48AM 1  problems were manifesting, we actually instructed the client

10:18:51AM 2  and the client agreed to actually call insureds to see if, in

10:18:54AM 3  fact, they knew they were represented.  In a lot of instances

10:18:58AM 4  they said yes, but plenty, they said no.  And so that's kind

10:19:01AM 5  of where we are.  So I don't see that there's any hesitation

10:19:04AM 6  at all in insurance companies being able to speak directly

10:19:07AM 7  with policyholders.

10:19:09AM 8       THE COURT:  All right.  Thank you, Mr. Monson.

10:19:14AM 9       I'm also aware and have been, I guess, told there is

10:19:18AM 10 no problem with me sharing this information with you all.

10:19:21AM 11      I'm aware that State Farm has reached out to MMA

10:19:26AM 12 through their various counsel and directly to the principal

10:19:29AM 13 of the firm now and indicated to MMA directly that they

10:19:32AM 14 intended to begin communicating with their insureds directly

10:19:35AM 15 and to take additional steps towards trying to settle cases

10:19:40AM 16 and the manner in which they intended to handle settlement

10:19:44AM 17 checks.  I've seen that letter.  I'm not vouching for any of

10:19:47AM 18 the merits of the letter or the arguments that are made in

10:19:50AM 19 the letter, but it is, I think, important that these insurers

10:19:55AM 20 have taken affirmative steps to begin moving these claims in

10:19:59AM 21 the right direction rather than wait for someone else to

10:20:04AM 22 solve these problems.  At a minimum, these actions will put

10:20:10AM 23 these issues at the forefront with MMA and are forcing their

10:20:16AM 24 hand to respond to the idea that the insurers are going to

10:20:21AM 25 start taking action to move these claims forward.

| | | |
|---|---|---|
| 10:20:23AM | 1 | Now, I'm curious whether anyone here representing any |
| 10:20:28AM | 2 | of the insurers has a contrary view as to whether at this |
| 10:20:33AM | 3 | time it is appropriate for the insurance companies to attempt |
| 10:20:36AM | 4 | to ascertain this information directly from their insureds. |
| 10:20:40AM | 5 | I'd like to hear the basis for that position if anybody is |
| 10:20:45AM | 6 | taking it. |
| 10:20:45AM | 7 | No? |
| 10:20:48AM | 8 | Okay.  Very good.  So maybe that's a problem that has |
| 10:20:51AM | 9 | already been solved and we don't need to be concerned about |
| 10:21:01AM | 10 | anymore. |
| 10:21:02AM | 11 | There is obviously a big problem out there that there |
| 10:21:07AM | 12 | are hundreds of claims pending out there where the insured is |
| 10:21:11AM | 13 | unaware that the claim was ever made.  That is a unique |
| 10:21:14AM | 14 | problem, I think, particularly the scale is unique to |
| 10:21:18AM | 15 | anything that we've ever seen.  MMA has admitted to having |
| 10:21:24AM | 16 | sent 856 letters of representation to insurance companies in |
| 10:21:29AM | 17 | cases in which they did not represent the insured.  So I |
| 10:21:32AM | 18 | don't know if the problem is bigger than that or if that's |
| 10:21:36AM | 19 | the limit, but, obviously, that is one of the things that the |
| 10:21:39AM | 20 | insurance companies need to ascertain at the very earliest |
| 10:21:43AM | 21 | point in time is whether this is a real claim and whether -- |
| 10:21:46AM | 22 | whether the homeowner even intended to or intends to make |
| 10:21:51AM | 23 | that claim.  And then the insurers can proceed from there. |
| 10:21:59AM | 24 | Another problem that appears to be a fairly common |
| 10:22:04AM | 25 | problem now is what to do about invocations of appraisal.  It |

10:22:11AM  1   would appear now that MMA invoked appraisal in a number of

10:22:15AM  2   cases in which they did not have the consent of their clients

10:22:19AM  3   to do so and I have received many phone calls and e-mails

10:22:21AM  4   about what do we do about an appraisal award that's been

10:22:25AM  5   agreed to by two appraisers when it would appear or we

10:22:29AM  6   suspect or we don't know whether the insured consented to

10:22:35AM  7   that appraisal.  I don't think that that's a particularly

10:22:39AM  8   complicated question to be honest.

10:22:42AM  9        I don't have the civil code in front of me, but in my

10:22:45AM  10  view, the invocation of appraisal in an insurance policy by a

10:22:50AM  11  lawyer without authority would be null.  I don't know how you

10:22:54AM  12  could seek to enforce it in any way.  And in most of these

10:22:57AM  13  cases, the appraisal award is not binding or enforceable in

10:23:02AM  14  any event.  The question just becomes what do you do with

10:23:05AM  15  that award and can there be a subsequent invocation of

10:23:11AM  16  appraisal in light of the fact that there has already been

10:23:14AM  17  one.

10:23:14AM  18       My view on that is in all likelihood yes.  And I

10:23:20AM  19  don't know why anyone would want to resist an invocation of

10:23:25AM  20  appraisal that's made properly, whether it's by the

10:23:26AM  21  homeowner, without counsel or more likely new counsel.

10:23:30AM  22       Having said all of those things, I'm also aware that

10:23:34AM  23  those appraisal awards, despite the fact that they were made

10:23:37AM  24  in a process that was not consented to by the homeowner, have

10:23:41AM  25  been relied on and homeowners have been paid and accepted

10:23:44AM  1   payments on those awards.  So I think that the key there is

10:23:49AM  2   to -- is to communicate about the problem, to be open about

10:23:53AM  3   the problem, to understand, I think, that if you try to go to

10:23:57AM  4   a court and insist that this person was represented at the

10:24:02AM  5   time and the lawyer had the authority to do this and,

10:24:04AM  6   therefore, this appraisal award is not binding, but is

10:24:10AM  7   sufficient and appropriate, I think you're going to lose that

10:24:13AM  8   argument.  And I don't know the point in making it.

10:24:15AM  9           You know, the folks that have been put in this

10:24:18AM  10  situation by this law firm have had enough problems and

10:24:22AM  11  fighting over things like this with them, I think, is

10:24:25AM  12  counter-productive and the last thing in the world that any

10:24:28AM  13  of us ought to be thinking about doing.  As I said in the

10:24:33AM  14  beginning, the problems created by this firm are

10:24:36AM  15  unprecedented in nature and no less authority than

10:24:42AM  16  Mr. Plattsmier has said that to me on multiple occasions.

10:24:46AM  17  And, you know, in his job, he's seen a lot.  I don't think

10:24:51AM  18  any of us have ever seen anything quite like this on this

10:24:56AM  19  scale.  And so I think that we all need to remember, not only

10:25:01AM  20  are our respective clients on the insurance side entitled to

10:25:07AM  21  all of the protections and justice that they would expect in

10:25:12AM  22  a court, but that we have perhaps thousands of policyholders

10:25:18AM  23  out there who have been victimized and whose rights need to

10:25:23AM  24  be protected and vindicated.  And I think it's important for

10:25:27AM  25  the court, for the bar on both sides of the vee to remember

10:25:30AM 1 that.

10:25:32AM 2 And I can tell you that every judge that I've talked

10:25:34AM 3 to in every court that is handling these cases feels very

10:25:38AM 4 strongly about that. And that's why we're doing things like

10:25:41AM 5 what we're doing today and what we will be doing to make sure

10:25:45AM 6 that these claimants' rights are protected, given the looming

10:25:50AM 7 deadline for filing lawsuits.

10:25:53AM 8 So now having said all of that, to close the loop on

10:25:58AM 9 appraisal -- and right now I'm just focused on handling what

10:26:05AM 10 has happened in the past with these MMA cases -- I've said

10:26:09AM 11 many times and many of you all are aware of it, we've got

10:26:14AM 12 plenty of active cases in this district where appraisal is

10:26:16AM 13 becoming an issue, the cases that are in CMO. There are a

10:26:19AM 14 number of cases and decisions that have -- that have come out

10:26:24AM 15 on timeliness. If you're much past four months and you're

10:26:28AM 16 seeking to invoke appraisal, it's unlikely that that's going

10:26:32AM 17 to be successful. You can read the cases. If you're within

10:26:35AM 18 four months of the appearance of an actual dispute and that

10:26:41AM 19 doesn't mean the first time you make a claim or send in your

10:26:44AM 20 public adjuster's estimate and it's different than what

10:26:47AM 21 you've been paid, that is not where the courts are looking at

10:26:50AM 22 the trigger point. Because, as we know, in most of these

10:26:55AM 23 cases, there are multiple adjustments, there are multiple

10:26:59AM 24 visits, there are multiple estimates, and there are multiple

10:27:03AM 25 tenders.

10:27:04AM  1      So there is a point in time when there is a final

10:27:06AM  2  actual dispute and I suggest that you all think about things

10:27:12AM  3  in those terms when you're going to fight this appraisal

10:27:16AM  4  battle and file your motion to invoke or motion to compel or

10:27:17AM  5  your opposition.  There are enough cases out there now that

10:27:20AM  6  you can look at that have come out of this district to get a

10:27:24AM  7  pretty good idea of how that's going to play out.

10:27:27AM  8      Again, as far as the appraisal awards that were

10:27:33AM  9  precipitated by MMA, I think that's really up to the lawyers

10:27:38AM  10  to discuss how to handle that and whether you need to go back

10:27:43AM  11  and do another appraisal, whether it's -- I would suggest

10:27:46AM  12  that no court is going to find that it's on an untimely

10:27:52AM  13  invocation once you discover that the appraisal process was

10:27:56AM  14  invoked by MMA without consent.  I think that that's probably

10:28:00AM  15  the time that the clock might start ticking on you for the

10:28:04AM  16  second time.

10:28:05AM  17      So, again, this is guidance and suggestions as to how

10:28:08AM  18  things might work out if you deal with those issues formally.

10:28:12AM  19  Informally, I guess it's up to the lawyers and the insured

10:28:17AM  20  and the insurer to decide what to do with those appraisal

10:28:21AM  21  awards regardless of whether they were invoked properly or

10:28:25AM  22  not.

10:28:26AM  23      All right.  One of the letters that I received in

10:28:34AM  24  advance of the conference asked that I address the insurers'

10:28:39AM  25  communications with new counsel.  I'm not sure why there

10:28:43AM **1**   would be any issues there.

10:28:44AM **2**        I do know that going back, you know, in past weeks to

10:28:50AM **3**   a month we did have some issues with insurers insisting that

10:28:56AM **4**   they would not communicate with new counsel until they got a

10:28:59AM **5**   withdrawal letter from MMA.  Well, y'all, that's not going to

10:29:04AM **6**   happen.  Ever.  Okay.  We've tested it.  We waited.  It's not

10:29:09AM **7**   happening.

10:29:11AM **8**        Again, let's go back to what I referred to as the

10:29:15AM **9**   known facts.  There are no lawyers for that firm in the state

10:29:19AM **10**  that can represent Hurricane Ida claimants and the firm has

10:29:26AM **11**  been nonresponsive to any requests or demands that they send

10:29:30AM **12**  withdrawal letters to insurance companies.  So they're not

10:29:33AM **13**  coming.

10:29:35AM **14**       In light of what we know and when you get information

10:29:39AM **15**  from a lawyer that says we have been hired by this person,

10:29:44AM **16**  despite the fact that you have a letter of representation

10:29:47AM **17**  from MMA, it is not only appropriate, but I think necessary

10:29:51AM **18**  to communicate with new counsel.  I'm not giving you a legal

10:29:56AM **19**  opinion.  I'm giving you my opinion.  I can't think of a

10:29:59AM **20**  reason under the circumstances -- I can't think of a

10:30:03AM **21**  reasonable explanation for refusing to communicate with new

10:30:07AM **22**  counsel in these circumstances while you're awaiting a letter

10:30:10AM **23**  that will never come.

10:30:13AM **24**       Does anyone have a contrary view as to that

10:30:19AM **25**  observation?

10:30:23AM **1**        Good.

10:30:23AM **2**        I'm not going to go out there and say the whole world

10:30:28AM **3**   agrees with me, but at least I see some people in this room

10:30:31AM **4**   that I recognize, so at least I know we didn't get any

10:30:35AM **5**   dissent from those folks.

10:30:38AM **6**        Okay.  On the issues related to counsel taking over

10:30:41AM **7**   these cases, there are many.  Many of us have spent countless

10:30:50AM **8**   hours working through the issues related to trying to get

10:30:52AM **9**   these former MMA clients represented and we have yet to untie

10:30:57AM **10**  that knot.  It is a complex and difficult set of problems to

10:31:04AM **11**  address, to do so ethically.  Happily, a large chunk of what

10:31:11AM **12**  I am told is 6,000 unfiled claims held by this law firm have

10:31:16AM **13**  been taken over by new counsel.  Somewhere probably in the

10:31:19AM **14**  neighborhood of 1,200 to 1,500 of those cases have been taken

10:31:23AM **15**  over by new counsel.  And my understanding is that that

10:31:27AM **16**  number should be increasing hopefully with the participation

10:31:31AM **17**  of additional law firms from this district.

10:31:33AM **18**        For those lawyers who have taken over a piece of that

10:31:38AM **19**  docket or are contemplating taking over a piece of that

10:31:42AM **20**  docket, I want to offer some thoughts to you all.  We, as a

10:31:47AM **21**  court, understand the pressures and the work and the costs

10:31:51AM **22**  associated with taking over scores or hundreds of cases,

10:31:54AM **23**  particularly from this law firm, with just over two months

10:31:58AM **24**  left to file a lawsuit.  As I mentioned, that's why we, as a

10:32:03AM **25**  court, will be discussing today and perhaps later, trying to

10:32:08AM 1  give everyone on both sides of the vee the -- on the

10:32:15AM 2  clients' side, on the claimants' side, the protection they

10:32:18AM 3  need to get their cases filed and to protect both the lawyers

10:32:23AM 4  who are doing that and the defense -- and the insureds from

10:32:27AM 5  having to respond to thousands of cases at the same time.  We

10:32:31AM 6  are working on some framework to give you all some breathing

10:32:36AM 7  room while still being able to protect your clients' rights

10:32:40AM 8  to get their cases filed.  So all I can say is to stay tuned

10:32:44AM 9  for additional general orders of the court on that issue.

10:32:50AM 10  One of the reasons we are doing that beyond, you

10:32:55AM 11  know, looking to protect the homeowners and buying everyone

10:33:01AM 12  some additional time is to encourage counsel to take these

10:33:05AM 13  cases because there are hundreds of people out there who need

10:33:08AM 14  new lawyers and to file the cases when they are ready.  No

10:33:14AM 15  matter what we do as a court, we are looking at an avalanche

10:33:19AM 16  of new lawsuits in the next two months.  We would all prefer

10:33:23AM 17  that avalanche to begin sooner rather than later, because the

10:33:27AM 18  later it begins, the worse it gets.

10:33:30AM 19  The problems associated with MMA's filings in the

10:33:33AM 20  Western District of Louisiana are probably well-known to

10:33:37AM 21  everybody in this room.  They filed 1,600 lawsuits in a

10:33:40AM 22  48-hour period at the end of the prescriptive period.

10:33:44AM 23  Why is that bad?  Lots of reasons.  It overwhelmed

10:33:50AM 24  the CM/ECF for a minute, but, you know what, that's okay.  We

10:33:55AM 25  can handle that.  That's a problem that can be fixed.  But

10:33:59AM 1    without the actions taken by Judge Cain in that district, you

10:34:04AM 2    can imagine what scheduling problems would flow from the

10:34:08AM 3    filing of 1,600 cases on the same day.  And when you wait

10:34:12AM 4    until the second or last day of the prescriptive period and

10:34:15AM 5    you have, oops, sued the wrong insurance company, that's it

10:34:19AM 6    for your client.  And, you know, that's it for your client

10:34:22AM 7    and that's it for you and your malpractice carrier.

10:34:28AM 8         So there are more reasons than just the court wanting

10:34:31AM 9    to efficiently manage the litigation to file the lawsuits

10:34:37AM 10   sooner rather than later.  If you had a case that is ready to

10:34:40AM 11   be filed, file it.  We're going to have a hard enough

10:34:46AM 12   problem.  It's going to be difficult enough to deal with what

10:34:49AM 13   we get in the best of circumstances now that we are where we

10:34:54AM 14   are.  So that is my unofficial message to you all on the

10:34:58AM 15   plaintiffs' side.  If it's ready, file it.  And, hopefully,

10:35:04AM 16   you will see soon that, again, we're going to give some

10:35:08AM 17   protection.

10:35:09AM 18        I know that vetting these cases in such a short

10:35:13AM 19   period of time is very difficult and time consuming.  That

10:35:15AM 20   fact has been shared with me by a number of you and that is

10:35:19AM 21   something that we intend to address as a court and I expected

10:35:26AM 22   that -- again, I expect that to happen soon.  So once you all

10:35:31AM 23   see what we put in place, I would ask that you act upon it.

10:35:38AM 24        All right.  So that's, I guess, what I have to say

10:35:45AM 25   about the question of taking cases and filing cases.  Now we

10:35:48AM  1   get to the more interesting and difficult issue of handling

10:35:53AM  2   fees.  And the fee issue is also complicated and there are

10:36:00AM  3   many levels to it.  And it impacts plaintiffs' counsel and

10:36:06AM  4   the insurance companies obviously.

10:36:09AM  5        So what I'm going to do is give you probably

10:36:14AM  6   overly-simplistic suggestions as to how to handle the

10:36:20AM  7   potential for a *quantum meruit* claim by MMA on a fee earned

10:36:23AM  8   in a case by new lawyers for one of their former clients.

10:36:26AM  9        Now, first, this may sound radical, but it's not.

10:36:32AM  10  I'm aware of at least one firm that is offering to indemnify

10:36:38AM  11  and defend the insurance company against any claims by MMA

10:36:43AM  12  for fees in cases that they settle.  Again, that may sound

10:36:50AM  13  unprecedented or weird or whatever it may sound like on first

10:36:54AM  14  blush, but upon reflection, it's not strange or weird to me

10:37:00AM  15  at all.

10:37:01AM  16       At the end of the day, we all know what we're dealing

10:37:04AM  17  with.  We are fully aware of the circumstances that got us

10:37:09AM  18  into this position.  This is not a situation where there is a

10:37:15AM  19  referral attorney lurking out there somewhere that we don't

10:37:18AM  20  know about or we're concerned about.  Everyone knows that

10:37:22AM  21  there is the potential for claims against attorney's fees,

10:37:28AM  22  awards or payments from settlement by this law firm.  We all

10:37:34AM  23  know it's a possibility.

10:37:36AM  24       Where would those fees come from?  They're going to

10:37:38AM  25  come from the fees you earn on settling that case.

10:37:42AM 1  Under the circumstances, that is a battle that is

10:37:44AM 2  going to be waged between new plaintiffs' counsel and former

10:37:48AM 3  plaintiffs' counsel and no one else.  And the -- and you'll

10:37:53AM 4  be fighting over one pot of money and it's your attorney's

10:37:56AM 5  fees.  Under the circumstances and given the need to get

10:38:00AM 6  these cases resolved, I don't see any reason why in most

10:38:06AM 7  circumstances plaintiffs' counsel would not be willing to

10:38:11AM 8  make that indemnification and accommodation to the insurance

10:38:15AM 9  company so the insurance company will cut a check without

10:38:19AM 10  MMA's name on it.  That's where the issues have come up

10:38:23AM 11  clearly.  And I've handled a lot of them.  With or without

10:38:29AM 12  that -- that indemnity allows that step to take place.

10:38:34AM 13  That's Step 1.

10:38:57AM 14  Step 2 -- and, again, these are suggestions and I've

10:39:03AM 15  made these suggestions in some cases that I've settled where

10:39:07AM 16  we've had some trouble and it's worked.  And the attorneys

10:39:10AM 17  have taken those suggestions and run with them.

10:39:17AM 18  Step 2 may be to issue two checks, one check to the

10:39:24AM 19  insured and the mortgage company, if appropriate, and one

10:39:28AM 20  check to the law firm for fees and costs.

10:39:33AM 21  Now, there have been two arguments that I've heard

10:39:36AM 22  that have been offered as reasons not to do this.  And I

10:39:41AM 23  personally am just one humbled magistrate judge in federal

10:39:49AM 24  district in Louisiana, but I don't buy neither one of them.

10:39:52AM 25  The first is the mortgage company will object.  The

10:39:55AM **1**   mortgage company will fight us.  Well, as far as I'm aware,

10:40:01AM **2**   Louisiana law, as determined by the Fourth Circuit Court of

10:40:05AM **3**   Appeals and United States Fifth Circuit Court of Appeals,

10:40:09AM **4**   after Katrina affirms that the lawyer's lien is superior to

10:40:14AM **5**   the mortgage company's lien in these cases.  And the mortgage

10:40:18AM **6**   company, of course, may object, but on what grounds I don't

10:40:24AM **7**   know.

10:40:26AM **8**          UNKNOWN SPEAKER:  Judge, can we take just a moment?

10:40:29AM **9**          THE COURT:  Do we have a problem?

10:40:30AM **10**         UNKNOWN SPEAKER:  Yes, we need an ambulance.

10:40:34AM **11**         THE COURT:  Can somebody in chambers who is listening

10:40:39AM **12**  call and get us an ambulance, please.  We've had someone pass

10:40:43AM **13**  out.

10:40:43AM **14**                      (Off the record.)

10:42:50AM **15**                      (In open court.)

10:42:50AM **16**         THE COURT:  So as I said, I know that the insurance

10:42:53AM **17**  companies have an obligation to protect the mortgage holder's

10:42:59AM **18**  rights in these cases, but I don't think that that duty is

10:43:02AM **19**  violated by cutting a separate check to a superior lien

10:43:06AM **20**  holder for fees and costs in these cases.  So I would suggest

10:43:11AM **21**  that that concern is misplaced if the separate checks are

10:43:19AM **22**  made, particularly if the separate checks are made a term of

10:43:22AM **23**  a settlement agreement.

10:43:23AM **24**         The second suggestion that I've heard is that such a

10:43:29AM **25**  bifurcated payment somehow violates the loss payee provisions

10:43:34AM 1 of a policy.  I don't buy that one either for a number of

10:43:39AM 2 reasons.

10:43:39AM 3     I think that insurance companies make payments on

10:43:46AM 4 claims all the time that they've already taken a position are

10:43:48AM 5 uncovered or for items that are excluded.  If it's part of

10:43:52AM 6 the terms of a settlement agreement, I think that there's no

10:43:56AM 7 obstacle to making these payments.  And, in fact, after these

10:44:00AM 8 discussions with me, a number of different insurance

10:44:02AM 9 companies in various cases have agreed to do just that.  So I

10:44:06AM 10 think it's an important step in the process because of what I

10:44:10AM 11 envision as the possible third step in the process.

10:44:13AM 12     I think it's important for you all to, if you

10:44:16AM 13 anticipate a possible *quantum meruit* claim against your fee,

10:44:23AM 14 to carve that fee out in a way that allows the homeowner to

10:44:27AM 15 be paid and puts you in a position to fight the fee fight

10:44:33AM 16 with MMA or its successor.  I say that because the next step

10:44:42AM 17 in the process is, what are we going to do or what are you

10:44:46AM 18 going to do about this potential for a claim against your fee

10:44:49AM 19 and how long it might last or how long is it going to be out

10:44:53AM 20 there and how can we expedite resolution of that problem or

10:44:59AM 21 concern.

10:44:59AM 22     Again, without being able to share detail, I have

10:45:06AM 23 pretty much completed what I am going to propose to the Court

10:45:10AM 24 as essentially a CMO within a CMO to handle those claims.

10:45:17AM 25 They would probably involve an interpleader by plaintiffs'

10:45:24AM  1  counsel of the fee, and within that interpleader action, at

10:45:31AM  2  least in my mind, would be subject to a separate standalone

10:45:35AM  3  Case Management Order that would expedite resolution of the

10:45:38AM  4  matter.  And I'm not sure -- I mean, I can sit here and tell

10:45:44AM  5  you everything in my head, but I don't know what the Court

10:45:46AM  6  will ultimately do with it.  So I don't want to go too far

10:45:50AM  7  out, get too far out ahead of myself.  That's what I

10:45:54AM  8  envisioned, is creating a framework for you all to get a

10:45:58AM  9  resolution through the Court of any such claims or determine

10:46:02AM  10  whether the -- determine that no such claim will be made in a

10:46:07AM  11  period of time so that we can move forward.

10:46:09AM  12      So as far as a concern about fees going forward, that

10:46:13AM  13  is sort of my, again, as I said, overly-simplistic view of a

10:46:20AM  14  multi-step process to kind of orderly handle those potential

10:46:24AM  15  problems.  And, frankly, I don't know whether there will be

10:46:28AM  16  problems.  There haven't been yet to my knowledge.  I mean,

10:46:30AM  17  maybe there have been some claims made by that law firm that

10:46:33AM  18  I'm unaware of, but as far as I know in this district, there

10:46:38AM  19  haven't been any.  And I don't know that there will, but,

10:46:42AM  20  obviously, you got to be concerned about the possibility.

10:46:43AM  21  And so we're going to try to address that concern and set up

10:46:47AM  22  a system to get everything resolved as expeditiously as we

10:46:52AM  23  can.

10:46:53AM  24      All right.  So, relatedly, there is the matter of

10:47:01AM  25  outstanding settlement checks of which there may be

10:47:04AM  1   thousands.  I'm getting questions and e-mails and phone calls

10:47:09AM  2   literally every day about outstanding settlement checks and

10:47:13AM  3   I'm getting handwritten letters and phone calls from

10:47:16AM  4   unrepresented insureds about their settlement checks that

10:47:21AM  5   they can't get.  So I know it's a problem.  I think that

10:47:26AM  6   knowing that there are hundreds, if not more, unnegotiated

10:47:32AM  7   settlement checks that the insurance companies have issued

10:47:35AM  8   with MMA's name on them, I would think it would be prudent to

10:47:40AM  9   cancel those checks and to work, I mean, most obviously with

10:47:46AM 10   new counsel to have them reissued along the lines of what I

10:47:51AM 11   just discussed.  Clearly, if the homeowner is unrepresented,

10:47:54AM 12   it becomes a little more complicated, but, hopefully, most of

10:48:00AM 13   these people will be represented.

10:48:02AM 14          Unfortunately, there are also situations where they

10:48:04AM 15   are not represented and have still got settlement checks.

10:48:09AM 16   And there are more of those cases than you could conceive of,

10:48:13AM 17   because of all of the cases in which these folks were not

10:48:16AM 18   actually represented by MMA, hundreds of settlement checks

10:48:21AM 19   were issued in their names.  And some people got that money

10:48:26AM 20   and took that money and probably didn't know why or where it

10:48:29AM 21   came from or why they were getting it.  But there were a lot

10:48:33AM 22   of checks sitting out there that derived from that process

10:48:36AM 23   that remain unnegotiated and I know that that is a problem

10:48:39AM 24   for the insurance company and the unrepresented litigant.

10:48:42AM 25          And not being an expert in how to handle that

10:48:45AM  1  particular problem, I'm going to refrain from giving you any

10:48:49AM  2  suggestions or advice other than I don't see any reason to

10:48:52AM  3  allow those checks to linger in a black hole somewhere.  So I

10:48:57AM  4  would think the first step in the process of fixing that

10:49:01AM  5  problem would be to cancel those checks with an eye towards

10:49:07AM  6  reissuing them or not, depending on why they were cut and on

10:49:11AM  7  what basis they were cut.

10:49:12AM  8       All right.  I've just got a couple of final

10:49:24AM  9  observations and then I'll let you all raise your concerns or

10:49:28AM  10  questions.  I am working on a proposal to make to the *en banc*

10:49:36AM  11  to streamline the substitution of counsel process, to make it

10:49:40AM  12  a little bit less onerous, particularly given the number of

10:49:46AM  13  claims that are out there that we're dealing with and just,

10:49:48AM  14  you know, again, to try to make it a little easier and more

10:49:52AM  15  efficient.

10:49:52AM  16       And, finally, it was brought to my attention that

10:49:56AM  17  those lawyers who are taking over cases from MMA where there

10:50:01AM  18  are lawsuits filed that there has not been proper service in

10:50:04AM  19  a lot of those lawsuits.  And so we're going to -- I'm going

10:50:08AM  20  to discuss with my colleagues perhaps putting an automatic

10:50:15AM  21  extension to serve a lawsuit filed in this district that

10:50:19AM  22  would run from the time that new counsel is actually

10:50:22AM  23  substituted by order to hopefully prevent the necessity of

10:50:28AM  24  you all having to file such motions or re-file lawsuits or

10:50:34AM  25  whatever other consequences might flow from there having been

10:50:35AM 1   no service.  So that's a concern that was raised with me

10:50:38AM 2   before the hearing and I just wanted to let you all know

10:50:41AM 3   that's something we're also working on because apparently

10:50:44AM 4   that's a problem I hadn't heard of until I got that letter.

10:50:48AM 5   I'm sure there are others that I haven't heard of.

10:50:50AM 6          Again, I want to give you all an opportunity to raise

10:50:53AM 7   any other concerns or questions.  If you want to do that, I'm

10:50:56AM 8   going to ask you to come to the podium so that I and

10:51:01AM 9   everybody else can hear you if there are questions or

10:51:04AM 10  concerns.

10:51:05AM 11          Don't be afraid to be the first, but also don't do it

10:51:08AM 12  just for the sake of doing it.

10:51:12AM 13          Anyone?

10:51:13AM 14          Come on up.

10:51:14AM 15          MR. MASSEY:  Good morning, Your Honor, Adam Massey.

10:51:17AM 16  I represent State Farm.

10:51:18AM 17          So one of the issues that we're hoping to get some

10:51:22AM 18  clarification on and everything that the Court has said

10:51:26AM 19  speaks to it, but one of the issues is whether or not there

10:51:30AM 20  would be an order expressly authorizing the insurers and/or

10:51:35AM 21  their counsel to communicate with policyholders as may be

10:51:40AM 22  required in matters where new counsel hasn't enrolled.  So it

10:51:43AM 23  seems like new counsel enrolling is -- that issue is going to

10:51:46AM 24  be cleared and it's going to be easy, but there's going to be

10:51:50AM 25  instances where we don't have new counsel enrolled yet.  So

10:51:53AM **1**   that's number one.  And it may be something that the Court is

10:51:56AM **2**   already prepared to do.

10:51:57AM **3**        I understand you have general orders --

10:51:59AM **4**        THE COURT:  Well, Mr. Massey, the Eastern District of

10:52:01AM **5**   Louisiana Court cannot order -- can't order anything to

10:52:05AM **6**   happen outside of the walls of this building.  We only have

10:52:09AM **7**   jurisdiction over cases that are filed here.  Okay?

10:52:12AM **8**        What I'm trying to do and what I attempted to do

10:52:15AM **9**   earlier was address that problem and make observations as to

10:52:21AM **10**  why I think it is appropriate for insurers to communicate

10:52:25AM **11**  with their own policyholders when the only letter of

10:52:30AM **12**  representation they've ever received is from a law firm that

10:52:34AM **13**  we know can't represent those people anymore.  I don't know

10:52:37AM **14**  what the obstacle to that is.

10:52:40AM **15**        MR. MASSEY:  I agree.  And anything that I'm saying

10:52:42AM **16**  is only pertaining to matters within the jurisdiction of the

10:52:47AM **17**  Eastern District of Louisiana.  Obviously, I'm not talking

10:52:50AM **18**  about a global order that applies to the state.

10:52:54AM **19**        THE COURT:  Okay.

10:52:54AM **20**        MR. MASSEY:  The other thought --

10:52:54AM **21**        THE COURT:  So your concern -- I get it.  Okay.  Your

10:52:55AM **22**  concern is communicating with litigants who remain

10:52:58AM **23**  unrepresented.

10:53:00AM **24**        MR. MASSEY:  Well, it's litigants as well as there's

10:53:02AM **25**  a number of instances where you have policyholders where

| | | |
|---|---|---|
| 10:53:06AM | 1 | there is no -- a case hasn't been filed yet, so it's a |
| 10:53:10AM | 2 | pre-suit claim.  There's a letter of representation that the |
| 10:53:13AM | 3 | claim continues to be adjusted and the standard procedure for |
| 10:53:17AM | 4 | the insurance company, obviously, as the Court has discussed, |
| 10:53:20AM | 5 | is communicating only directly with the attorney. |
| 10:53:22AM | 6 | THE COURT:  There is no attorney. |
| 10:53:24AM | 7 | MR. MASSEY:  I understand that. |
| 10:53:28AM | 8 | The other issue is whether or not the Court was |
| 10:53:30AM | 9 | considering an order officially terminating or dissolving |
| 10:53:36AM | 10 | MMA's representation within the cases of the Eastern District |
| 10:53:40AM | 11 | of Louisiana with cause to the extent that that -- |
| 10:53:42AM | 12 | THE COURT:  MMA as an entity has never been enrolled |
| 10:53:45AM | 13 | in this district.  Individual lawyers have been enrolled. |
| 10:53:49AM | 14 | They have all withdrawn from every case in the district. |
| 10:53:52AM | 15 | That's already happened.  So there are no lawyers associated |
| 10:53:55AM | 16 | with that firm actively enrolled in any case pending in the |
| 10:54:01AM | 17 | district right now.  That's already occurred. |
| 10:54:03AM | 18 | MR. MASSEY:  Okay.  All right.  Well, that's all I |
| 10:54:04AM | 19 | have.  I appreciate it. |
| 10:54:05AM | 20 | THE COURT:  All right.  Thank you. |
| 10:54:09AM | 21 | Anyone else? |
| 10:54:13AM | 22 | Sure.  Come on up. |
| 10:54:15AM | 23 | MR. CHASSAIGNAC:  Just one more question.  Charles |
| 10:54:18AM | 24 | Chassaignac.  I represent State Farm and a few other |
| 10:54:22AM | 25 | insurers. |

10:54:22AM 1      Once this avalanche happens over the next three

10:54:27AM 2 months, is the Court contemplating -- I would suggest that

10:54:29AM 3 the Court ought to contemplate some process to stagger the

10:54:34AM 4 response to those lawsuits and any entry into the CMO.

10:54:39AM 5      THE COURT:  Yes.

10:54:40AM 6      MR. CHASSAIGNAC:  And so we can expect that that will

10:54:42AM 7 be addressed by the Court?

10:54:43AM 8      THE COURT:  Well, you asked if we were contemplating

10:54:46AM 9 it.

10:54:49AM 10      MR. CHASSAIGNAC:  I was being polite.

10:54:51AM 11      THE COURT:  I'm going to the *en banc* meeting, but I

10:54:55AM 12 don't have a vote.  No.

10:54:56AM 13      That's on the agenda for us to discuss.  It's

10:55:00AM 14 obviously a problem that we have to address.  We can't have

10:55:03AM 15 State Farm's lawyers having to answer a thousand lawsuits on

10:55:08AM 16 the same day.  We all understand that.  And so there are a

10:55:10AM 17 lot of different ways to address that and we will do

10:55:13AM 18 something to address it, as well as entry into -- entry into

10:55:18AM 19 the Streamlined Settlement Program.

10:55:21AM 20      Everybody in this room could be a mediator and we

10:55:25AM 21 still couldn't do it if we had to do it all at once.  So we

10:55:29AM 22 are going to address it.

10:55:30AM 23      MR. CHASSAIGNAC:  That's all I have.  Thank you.

10:55:32AM 24      THE COURT:  Thanks.

10:55:33AM 25      MR. KLEEMAN:  Good morning, Your Honor, Doug Kleeman.

10:55:37AM  1   I represent various carriers who all have the similar issue.

10:55:41AM  2         It's a category of previously issued and uncashed

10:55:45AM  3   settlement checks where MMA negotiated the settlement, the

10:55:50AM  4   insured signed a release, the insured acknowledges that MMA

10:55:55AM  5   was representing them, but because the insurer had to issue

10:55:59AM  6   the check with MMA as a co-payee per the law, per the release

10:56:05AM  7   agreement and MMA has a statutory lien on these funds because

10:56:09AM  8   they assisted -- they negotiated the settlement on behalf of

10:56:12AM  9   their client, my clients don't know what to do with the

10:56:15AM  10  settlement checks where the insureds are calling saying I

10:56:18AM  11  haven't received my portion of the settlement funds, the

10:56:22AM  12  checks are sitting somewhere in MMA office --

10:56:25AM  13        THE COURT:  Well, again, I can only -- I can only

10:56:29AM  14  tell you, you know, what I think.  If I was sitting in a room

10:56:32AM  15  with you all trying to solve this problem -- I think the

10:56:37AM  16  problem is easier to solve if the insured is saying this is

10:56:41AM  17  my settlement, I want my share of this money.

10:56:45AM  18        Again, I think that -- you know that MMA is going to

10:56:50AM  19  say they have a lien on the fee, on the recovery.

10:56:54AM  20        Do you have the contracts?  Any idea what the

10:56:57AM  21  percentage is that they will claim if it was their case?

10:57:02AM  22        MR. KLEEMAN:  We don't have the contracts.

10:57:02AM  23        THE COURT:  I'm sorry?

10:57:07AM  24        MR. KLEEMAN:  I'm hearing 48 and a half percent.

10:57:11AM  25        THE COURT:  No.  Hold on.  I've got the contracts.

10:57:15AM  1   Well, I've got the contracts for the cases in this district.

10:57:20AM  2   I don't have the contracts necessarily for what you're

10:57:22AM  3   talking about.

10:57:23AM  4       I think that you issued -- again, I think that one

10:57:26AM  5   solution is to issue two checks and carve out -- is there

10:57:32AM  6   paperwork where the plaintiff signed a piece of paper that

10:57:36AM  7   you've seen that says they acknowledge this settlement?

10:57:41AM  8       MR. KLEEMAN:  Yes.  We have signed release

10:57:44AM  9   agreements, but there are no percentages.  It just says the

10:57:48AM  10  payment is made payable --

10:57:48AM  11      THE COURT:  There's an amount of money on the piece

10:57:50AM  12  of paper that says fees and costs.

10:57:52AM  13      MR. KLEEMAN:  No.  It's just a lump sum and a release

10:57:54AM  14  agreement.

10:57:55AM  15      THE COURT:  I got you.  I got you.

10:57:57AM  16      Again, I would interplead that portion of the

10:58:01AM  17  proceeds that you all think is appropriate to protect MMA's

10:58:06AM  18  rights and then go from there.  Again, I think the insurance

10:58:09AM  19  companies -- I get the concern and I know there are all kind

10:58:13AM  20  of pitfalls out there because we've never been through

10:58:16AM  21  something like this before.  But I think everybody involved

10:58:22AM  22  needs to bend over backwards to get these folks their money.

10:58:28AM  23      It's been two years, almost two years since the

10:58:31AM  24  storm.  So be creative and take on the responsibility of

10:58:36AM  25  interpleading that portion of the proceeds that you believe

10:58:38AM 1   are attributable, would be attributable to a fee, and if

10:58:42AM 2   there's no fee awarded, then that money goes to the

10:58:44AM 3   homeowner, right?  But I think that's the -- that, to me, is

10:58:49AM 4   the most straightforward process to solve that problem.

10:58:53AM 5           MR. KLEEMAN:  Thank you, Your Honor.

10:58:54AM 6           THE COURT:  All right.

10:59:00AM 7           MS. SMITH:  Hi, Judge North, Jena Smith.  We

10:59:04AM 8   represent a number of underwriters and things.

10:59:06AM 9           Our question, it might be directed to Mr. Monson or

10:59:09AM 10  some of the other insurers who have actually spoken with the

10:59:13AM 11  unrepresented claimants.  The question is, I get that it's

10:59:16AM 12  the insurance companies that might be speaking directly to

10:59:20AM 13  them or the TPAs, the third-party adjusters.  Are we, the

10:59:25AM 14  attorneys, I guess is our concern, whether we should be

10:59:28AM 15  making those phone calls or --

10:59:29AM 16          THE COURT:  I would think not.

10:59:29AM 17          MS. SMITH:  -- or whether the insurance company?

10:59:31AM 18          THE COURT:  I mean, I would think not.  I don't know.

10:59:34AM 19  I'm not an expert at that level of the ethical rules.  I

10:59:40AM 20  think the insurance company -- I think at that point you've

10:59:43AM 21  got an unrepresented policyholder and it would be appropriate

10:59:47AM 22  for the insurance company to speak to them or the adjuster to

10:59:52AM 23  speak to them.

10:59:53AM 24          MS. SMITH:  That was our question.  Thank you.

11:00:00AM 25          MS. WATERS:  Good morning, Your Honor, Lori Waters.

| | | |
|---|---|---|
| 11:00:03AM | 1 | I represent a few of the former MMA clients. |
| 11:00:06AM | 2 | I have come across an issue with some of the carriers |
| 11:00:10AM | 3 | requiring that when we send LORs out from us that they're |
| 11:00:14AM | 4 | requiring that the client originally sign that LOR, which is |
| 11:00:19AM | 5 | slowing the process down.  So if MMA is no longer |
| 11:00:24AM | 6 | representing, I don't understand why it's necessary for that. |
| 11:00:25AM | 7 | THE COURT:  I don't either. |
| 11:00:30AM | 8 | MS. WATERS:  So can we just go ahead -- |
| 11:00:32AM | 9 | THE COURT:  Yeah.  I mean, look, I'm not in a |
| 11:00:35AM | 10 | position to issue orders in cases that aren't cases that |
| 11:00:38AM | 11 | aren't pending here.  I'm telling you, I think that's |
| 11:00:43AM | 12 | overkill and it's unnecessary.  I get all the reasons why |
| 11:00:49AM | 13 | insurance companies are gun-shy dealing with these cases, but |
| 11:00:55AM | 14 | you are not MMA and neither is anybody else in this room who |
| 11:01:01AM | 15 | is taking over these cases.  So the sins of one law firm |
| 11:01:03AM | 16 | should not be imputed to another law firm who is just trying |
| 11:01:06AM | 17 | to take over the case and move the claim forward.  So I don't |
| 11:01:08AM | 18 | think that additional hoops ought to be put in place to make |
| 11:01:12AM | 19 | that process any more difficult. |
| 11:01:13AM | 20 | So those of you who represent insurance companies who |
| 11:01:17AM | 21 | are insisting on that, I would suggest that you give them a |
| 11:01:21AM | 22 | call and tell them that they should not do that. |
| 11:01:25AM | 23 | MS. WATERS:  Thank you. |
| 11:01:27AM | 24 | MR. MILLER:  Good morning, Judge North.  Kerry |
| 11:01:29AM | 25 | Miller, I represent Morris Bart and thank you for your time. |

| | | |
|---|---|---|
| 11:01:33AM | 1 | One issue I wanted to bring up, which may be |
| 11:01:35AM | 2 | appropriate for the *en banc* meetings that you mentioned are |
| 11:01:39AM | 3 | going to take place here about docket issues, that deals with |
| 11:01:39AM | 4 | jurisdictional problems resulting from MMA suing insolvent |
| 11:01:47AM | 5 | insurers where LIGA is now the substituted party and it may |
| 11:01:50AM | 6 | create a jurisdictional issue, particularly when you can't |
| 11:01:53AM | 7 | get a Rule 41 dismissal without consent of the insolvent |
| 11:01:55AM | 8 | party -- |
| 11:01:55AM | 9 | THE COURT:  I thought about that.  I don't know |
| 11:01:59AM | 10 | what -- I don't know what -- what you or the court can do |
| 11:02:02AM | 11 | other than wait for the stay to be lifted in those cases. |
| 11:02:12AM | 12 | And, again, I'm not an expert in, you know, this entire |
| 11:02:16AM | 13 | procedure with the insolvency and the entrance of LIGA and |
| 11:02:21AM | 14 | what is necessary for the stay to be ultimately lifted as to |
| 11:02:24AM | 15 | all the cases.  I don't know if you can convince LIGA through |
| 11:02:28AM | 16 | its counsel to jointly move to lift the stay for purposes of |
| 11:02:31AM | 17 | filing those motions on a case-by-case basis, but short of |
| 11:02:36AM | 18 | doing that, I don't know what you can do or what the court |
| 11:02:39AM | 19 | can do while the stay is in place. |
| 11:02:44AM | 20 | MR. MILLER:  And maybe it's a joint motion between |
| 11:02:46AM | 21 | new counsel and LIGA to lift the stay to effectuate the |
| 11:02:48AM | 22 | dismissal to be in a court of proper jurisdiction. |
| 11:02:53AM | 23 | THE COURT:  Yeah, on a case-by-case basis.  I mean, |
| 11:02:55AM | 24 | there may be reasons why LIGA doesn't want to do that.  I |
| 11:02:58AM | 25 | don't know what they are, but I would suggest -- I'm aware of |

11:02:59AM  1    that concern.  I would suggest that's probably the way to do

11:03:02AM  2    it.  I don't think the court is going to step in, this court

11:03:05AM  3    is going to step in, and take any sort of unusual action in

11:03:10AM  4    cases that we know are not going to stay here.

11:03:13AM  5         MR. MILLER:  Well, maybe we do that, we reach out.

11:03:15AM  6    We try to file a joint motion to lift stay and maybe that

11:03:19AM  7    will flesh the issue out.  So we will take that --

11:03:21AM  8         THE COURT:  And on that topic, just because I was

11:03:24AM  9    going to say this about that topic, I'm going to say this

11:03:29AM  10   about everything.  If you all have questions that come up

11:03:33AM  11   from time to time or concerns or issues and you say I wish I

11:03:41AM  12   knew what the Court might think about this or we need some

11:03:44AM  13   guidance or what have you, you are free to call me or e-mail

11:03:48AM  14   me with those concerns.  You may cause me to throw myself off

11:03:53AM  15   the top of this building eventually, but so far, so far,

11:03:57AM  16   they've been manageable.

11:03:58AM  17        And sometimes that's just the easiest way to save a

11:04:03AM  18   lot of time and research and hand-ringing is to reach out to

11:04:08AM  19   the court and raise the concern.  I'm willing to take those

11:04:13AM  20   calls and those e-mails to try to help you all.

11:04:16AM  21        So, for instance, if you want me to sit in on a call

11:04:24AM  22   or a meeting with you and LIGA's counsel to work through

11:04:30AM  23   these, I'm willing to do those kinds things.  Okay?

11:04:33AM  24        And I just wanted to mention that, not just on that

11:04:36AM  25   issue, but on every other issue.  I know a lot of you all

11:04:40AM **1**   already know that you can call or e-mail me because I got a

11:04:44AM **2**   lot of them, but I want everybody to know that you all can

11:04:45AM **3**   feel free to do that.

11:04:47AM **4**       MR. MILLER:  Thank you for that.

11:04:49AM **5**       And the other issue is more informational, but it is

11:04:51AM **6**   a recent development in the Western District that's pertinent

11:04:53AM **7**   to a number of the Court's comments and that relates to --

11:04:56AM **8**   and it's not happening here thankfully, but it's going to

11:05:02AM **9**   relate to the unfiled cases, I believe, and a number of the

11:05:04AM **10**   comments.

11:05:04AM **11**       And that is in the Western District a couple of

11:05:06AM **12**   months ago MMA did file attorney lien claims in cases in

11:05:11AM **13**   which new counsel made an appearance.  Judge Cane ordered MMA

11:05:18AM **14**   to file -- we opposed on behalf of Morris Bart any lien claim

11:05:24AM **15**   including on the basis of *quantum meruit*.  The judge in the

11:05:25AM **16**   Western District ordered MMA to file a response with new

11:05:29AM **17**   counsel.  That deadline was last Friday.  No response was

11:05:32AM **18**   filed.  The hearing date is next week, June 20th.  So we are

11:05:36AM **19**   anticipating relatively soon an order from the Western

11:05:40AM **20**   District in which it will analyze whether or not there is any

11:05:46AM **21**   *quantum meruit* basis and we do anticipate a positive ruling

11:05:48AM **22**   in light of the fact that MMA was given two opportunities to

11:05:52AM **23**   respond to the issue on the merits and didn't do it.

11:05:55AM **24**       THE COURT:  Well, I appreciate that information.  I

11:05:57AM **25**   was unaware that that had happened.  Unfortunately, for us,

11:06:03AM   1   in this situation, we have not captured all the cases.  Judge

11:06:11AM   2   Cane has.  These problems arose in the Western District after

11:06:16AM   3   every lawsuit that could be filed was filed, so there's a

11:06:18AM   4   known universe of claims and the judges in that district have

11:06:22AM   5   jurisdiction over all of them and can issue an order that

11:06:25AM   6   says make your claim in every case.  We're not in that

11:06:29AM   7   position yet.

11:06:31AM   8         You know, in a few months, we will be and that may be

11:06:35AM   9   part of what I talked about earlier in terms of

11:06:41AM   10  interpleaders.  That may become unnecessary.  We just don't

11:06:44AM   11  know yet.  But we'll get closer to the possibility of that

11:06:48AM   12  sort of resolution once we know what the census of cases

11:06:53AM   13  looks like.

11:06:55AM   14        MR. MILLER:  Yeah.  So we anticipate a ruling from

11:06:56AM   15  the Western District on *quantum meruit* soon.

11:06:57AM   16        And as Your Honor knows, Morris Bart has a separate

11:06:59AM   17  case against MMA pending before Judge Africk in which that

11:07:02AM   18  relief is pled in a declaratory judgment, and so what may end

11:07:06AM   19  up happening is Morris Bart moving for summary judgment on

11:07:11AM   20  the basis of nullity for the unfiled cases, obviously cases

11:07:15AM   21  in which MMA has not filed a lien claim, but exists out there

11:07:19AM   22  somewhere in the universe.

11:07:21AM   23        THE COURT:  All right.  Thanks.

11:07:25AM   24        Anybody else?

11:07:29AM   25        All right.  Well, thank you all for coming.  I

11:07:33AM 1    probably will never do this again in my entire career.  No.

11:07:37AM 2         Actually, I hope I never have to do it again in my

11:07:42AM 3    entire career, but I will if necessary.  I don't anticipate

11:07:45AM 4    that that will be necessary on this docket.  But if it is,

11:07:49AM 5    we'll do it again.  All right.

11:07:50AM 6         Thanks, everybody.

          7                          * * * *

          8         (WHEREUPON, the proceedings were adjourned.)

          9                          * * * *

         10                   REPORTER'S CERTIFICATE

         11         I, Nichelle N. Wheeler, RMR, CRR, Official Court
              Reporter, United States District Court, Eastern District of
         12   Louisiana, do hereby certify that the foregoing is a true and
              correct transcript, to the best of my ability and
         13   understanding, from the record of the proceedings in the
              above-entitled and numbered matter.

         14

         15              /s/ Nichelle N. Wheeler
                       Official Court Reporter

         16

         17

         18

         19

         20

         21

         22

         23

         24

         25